**H. C. FRANKLIN and Marjorie Franklin, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 81–4425.**

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1982.

Hubert D. Johnson, Dallas, Tex., for petitioners-appellants.

John F. Murray, Acting Asst. Atty. Gen., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Appellate Sec., Tax Div., Dept. of Justice, John H. Menzel, Director, Tax Litigation Div., I. R. S., Jonathan S. Cohen, Gayle P. Miller, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before RUBIN and REAVLEY, Circuit Judges, and HUNTER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

■ We here consider the deductibility of interest paid by a cash basis taxpayer with money borrowed to fulfill his interest obligations on loans made in participation by a group of banks. The taxpayer borrowed from the lead bank to pay interest due both that bank and the other banks that had participated in loans to him. All parties agree that the portion of the interest payments attributable to the lead bank's share in the loans is not deductible. Reversing the tax court, we conclude that the portion of the interest payments attributable to the shares of the participating banks in the prior loans is deductible.

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The proceeds from the 1973 interest note were deposited in Franklin's account at Capital Bank. He drew a check payable to Capital Bank on that account to pay the interest. The parties stipulated:

## I.

H. C. Franklin was chief executive officer of Lone Star Company in Dallas, Texas. He and his first wife, Camille, were divorced in March 1972. In order to complete a community property settlement, Franklin borrowed $2,250,000 (the "1973 loan") in a transaction arranged by Capital National Bank in Austin ("Capital Bank"). Capital Bank did not, however, make the loan entirely for its own account. While Franklin signed a note payable to Capital Bank, the note referred to "this note . . . or participation therein." Capital Bank in fact sold loan participations and issued certificates of participation in the note to five other Texas banks. Capital Bank as the manager of the loan, or the lead bank, retained a $530,000 share (about 23.5%) in the note.

When the $2,250,000 note matured in March 1973, Franklin borrowed $120,124.99 from Capital Bank (the "1973 interest note"). This loan, made by Capital Bank alone, was used to pay the unpaid interest then owing on the 1973 loan. The interest was actually disbursed to the participating banks in accordance with their rights under the certificates of participation.[1]

Franklin renewed the 1973 loan, but this time nine banks participated in the loan (the "1974 loan"). Capital Bank retained $530,000 of the 1974 loan. When the 1974 loan fell due in March 1974, the unpaid interest on it amounted to $206,414.49. Capital Bank, acting alone, loaned Franklin $217,491.27 (the "1974 interest note"). $188,865.99 represented unpaid interest due the participating banks on the second loan, $17,548.50 represented unpaid interest due to Capital Bank on the 1974 loan, and the remainder, $11,076.78, represented unpaid interest due Capital Bank on the 1973 inter-

This interest payment made by such check was disbursed to the participating banks in accordance with their rights under their certificates of participation and part of the interest payment made by such check was retained by the lead bank.

est note. Capital Bank as lead bank remitted the $188,865.99 in interest to the nine participating banks.[2]

The Commissioner filed a notice of deficiency asserting that Franklin was not entitled to interest deductions of $120,124.99 and $217,491.00 for the years 1973 and 1974, respectively. Franklin petitioned the Tax Court for a redetermination of the deficiency. The Tax Court held that Franklin was not entitled to the interest deductions because he had not actually paid the interest due, but, by borrowing to meet his interest obligations, he had merely given Capital Bank a promise to pay the interest in the future. The Tax Court rejected Franklin's alternative argument that, if the interest deductions were denied, he should be allowed to use the accrual method of accounting to reflect the interest charges.

## II.

### A.

■■■■ Section 163(a) of the Internal Revenue Code allows as a deduction from income "all interest *paid* or accrued within the taxable year on indebtedness." (Emphasis added.) Interest paid to one lender by a cash basis taxpayer with funds borrowed from a second lender is deductible when the interest is paid.[3] When, however, the taxpayer gives the lender his note, he has paid nothing; he has merely promised again to pay.[4] Thus if the taxpayer has borrowed from Peter to pay Paul, the deduction is allowed; if he has borrowed from Peter to refinance what is due Peter, there is no real payment and hence no deduction.

In *Battelstein, supra,* when the interest due the taxpayers' creditor came due, the taxpayers executed a separate interest note with the creditor. The money advanced by the creditor was deposited in a bank account, and the taxpayers drew a check on this account to "pay" the interest owing to the creditor. Nothing more than "paper-shuffling" was involved. The taxpayers-debtors might never have paid the new note, and the creditor might never have actually received payment of the interest owed. That interest was in effect merely renewed and rolled over, and the court held that "such a surrender of notes does not constitute payment for tax purposes entitling a taxpayer to a deduction." 631 F.2d at 1184. We distinguished this situation from

> one in which a taxpayer borrows money from a third party in order to pay the original lender the interest. In such a situation the interest is considered paid and deductible because the obligation as

---

2. The parties stipulated:

   The lead bank remitted $188,865.99 to the participating bank[s] out of the funds made available based on such note for $217,491.27. While no deposit credits were made or checks were written disbursing such $217,-491.27, the lending bank funded such loan by proper credit and disbursed the same by appropriate debits evidencing the disbursements.

   In March 1975, Franklin obtained a $2,850,000 loan from Mercantile National Bank at Dallas and used the proceeds to pay the 1974 loan, the 1973 and 1974 interest notes, and accrued interest thereon.

3. *See Battelstein v. IRS,* 631 F.2d 1182, 1184 n.3 (5th Cir. 1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *Keith v. Commissioner,* 139 F.2d 596, 597 (2d Cir. 1944); *Crain v. Commissioner,* 75 F.2d 962, 964 (8th Cir. 1935); Comment, Battelstein v. Internal Revenue Service: *Deductibility of Interest Payments Financed by Additional Loans from the Same Lender,* 35 Tax Law. 275, 285

n.74 (1981) ("A borrower who makes an interest payment to lender A with proceeds from a loan advanced by lender B, however, would appear to have actually 'paid' lender A within the meaning of section 163(a).").

4. *Helvering v. Price,* 309 U.S. 409, 413, 60 S.Ct. 673, 675, 84 L.Ed. 836, 839 (1940); *Wilkerson v. Commissioner,* 655 F.2d 980, 982 (9th Cir. 1981) ("A cash-basis taxpayer 'pays' interest only when he pays cash or its equivalent to his lender. He does not pay the interest when he gives his lender a promise to pay cash at a future date, even if that promise is evidenced by a note.... The principle is based on financial reality: the note may never be paid and if it is not paid the taxpayer has parted with nothing more than his promise to pay.") (citations omitted); *Heyman v. Commissioner,* 652 F.2d 598 (6th Cir. 1980) (disallowing a § 163(a) deduction by a cash-basis taxpayer because a promise to pay interest is not cash or its equivalent); *Battelstein, supra,* 631 F.2d at 1184.

between the taxpayer and the original lender has not been postponed, it has been extinguished.

631 F.2d at 1184 n.3.

Franklin here did not engage in mere "paper-shuffling." While the amounts paid Capital Bank as interest on the 1973 and 1974 loans were merely roll-overs or changes in the form and maturity or the interest obligation then owing to Capital Bank, actual disbursements of the interest payments due the participating banks were made to those banks each year. Each participant was paid its share of the interest, subject to no future contingencies so far as those banks were concerned.[5]

## B.

"The proper legal characterization of [participation agreements] is a topic about which increasing controversy exists."[6] "The terms of the participation agreement will, of course, govern the participation relationship . . . ."[7] The certificates of participation used for the Franklin notes make it clear that the "sole responsibility" of Capital Bank was limited: "being to exercise the same care that we exercise in the making and handling of loans for our own account and to account to you for your pro rata share of the net amount of all payments actually received by us with respect to the said note."[8] These certificates of participation refer to the transaction they concern as a *sale* of the participations. After the sale of the participations and the issuance of the certificates of participation, Capital Bank was but the agent of the participants in handling each note.[9]

---

**5.** One commentator has noted:

[T]he real issue in determining the deductibility of an interest payment should be whether a liability was extinguished. The lending of money by an institution to pay a previous obligation owed to it is little more than a deferral, and not an extinguishment, of the liability. Conversely, the payment of an obligation with funds borrowed from a different institution extinguishes a liability, although it creates another one.

Comment, *supra* note 3, at 285 n.74.

**6.** Drake & Weems, *Mortgage Loan Participations: The Trustee's Attack*, 52 Am.Bankr.L.J. 23, 24 (1978) (footnote omitted).

**7.** Hutchins, *What Exactly is a Loan Participation?* 9 Rut. Cam.L.J. 447, 458 (1978).

**8.** Each of the participating banks received a certificate of participation from Capital in the following form:

This certificate evidences your participation with us in a $_____ note to _____ dated _____. Said note matures _____ at the rate of _____% from _____. We have this date sold to you a participation in the amount of $_____ * * * [at] _____% with _____ accrued interest

_____.

The execution of this participation agreement shall not limit or affect our discretion in exercising or refraining from exercising without notice to you any and all rights afforded to us by the above mentioned note or any other paper or document relating thereto, our sole responsibility to you being to exercise the same care that we exercise in the making and handling of loans for our own account and to account to you for your pro rata share of the

net amount of all payments actually received by us with respect to the said note. The right to repurchase all, or any part of this Participation is reserved to the Capital National Bank in Austin, Texas.

**9.** In effect, the participants purchased an ownership interest in the loan, although the lead bank continued in possession of the note. *See* MacDonald, *Loan Participations As Enforceable Property Rights in Bankruptcy—A Reply to the Trustee's Attack*, 53 Am.Bankr.L.J. 35, 49 (1979); Simpson, *Loan Participations: Pitfalls for Participants*, 31 Bus.Law. 1977, 1982–83 (1976) ("Regardless of whether the transaction between the lead and its participant is intended as a sale or a financing, the lead will usually continue in possession of the underlying loan documents, including any promissory note evidencing the third-party obligation, and will continue to service the loan . . . ."); Stahl, *Loan Participations: Lead Insolvency and Participants' Rights (Part I)*, 94 Banking L.J. 882, 888 (1977) ("the case law has treated a participation in an unsecured note as the equivalent of the sale of an entire interest in an instrument and has recognized that the participant has an ownership interest").

The lead-participant relationship has been characterized in a variety of ways. For instance, Hutchins, *supra* note 6, at 458-74 describes six possible relationships: debtor-creditor, assignment, tenancy in common, joint venture, agency, and trust. Under the terms of the participation agreement in this case, however, the participant is an assignee of a percentage interest of the loan and the lead bank is the agent for servicing the entire loan. *See*, MacDonald, *supra*, at 39 n.12 ("in bank and savings

The Tax Court opinion states that, in terms of tax policy, it is difficult to see why the deductibility of the taxpayer's interest should be affected by whether Capital Bank chose to sell participations. This myopia results from failure to perceive that this sale of participations was not an illusion or a paper transaction. The sale of participations converted Franklin's creditors from one bank to a group of banks. Franklin could not have prevented Capital Bank from selling the entire loan to another bank and thereafter acting merely as servicing agent. In that event, all of the interest borrowed from Capital Bank would have been deductible. The significant fact is not whether Franklin controlled the identity of the bank to which he owed money, but whether he borrowed from a creditor to pay the same creditor. It is immaterial whether the payments were collected directly by the banks to whom they were, in fact, legally due.

It is not significant that the participants were not named in the notes or that Franklin was not a party to the participations.[10] The IRS grumbles that approval of Franklin's position would impose a "highly impracticable administrative requirement" on it to trace each loan from the lending bank into the hands of third parties, and possibly beyond. The taxpayer who claims the deduction, however, "bears the burden of proving his entitlement to a particular deduction." *Battelstein, supra,* 631 F.2d at 1185. Once he has adduced the names of the participants and their shares, by producing the participation certificate or in some other fashion, verification is routine.

### III.

On appeal, Franklin concedes that he is not entitled to deduct the portion of the interest payments on the two interest notes attributable to Capital Bank's participation in the loans. Accordingly, since we find that Franklin is entitled to deduct the interest payments attributable to the participations of the other banks, it is unnecessary to reach Franklin's alternative argument that, if denied the interest deductions, the Commissioner should allow Franklin to account for the loans via accrual accounting.

For these reasons, the judgment of the Tax Court is REVERSED. The case is REMANDED for further proceedings consistent with this opinion to redetermine the allowable interest deductions for 1973 and 1974.

and loan liquidations run by the FDIC and FSLIC, sales of participations are typically honored as the transfer of an ownership interest in the underlying loan"). Several cases have also recognized this characterization of the lead-participant relationship. *See FDIC v. Mademoiselle of Cal.,* 379 F.2d 660, 665 (9th Cir. 1967) (if the debtor had made a specific payment on the note to the insolvent lead rather than setting off its deposit in an account with the lead against the note, then this case would come within the rule that assignment of 80% of the note to a participant would pass legal title in 80% of the proceeds to the participant); *Delatour v. Prudence Realization Corp.,* 167 F.2d 621, 624 (2d Cir. 1948) (certificate holders were "owners of the mortgage" and after default by the mortgagor and creditor were entitled to an "aliquot share of the principal of the fruits of that share represented by the interest reserved in the mortgage"); *In re Fried Furniture Corp.,* 293 F.Supp. 92 (E.D.N.Y.1968) (SBA, as a 75% participant in a loan, has a lien on the proceeds of the sale of the bankrupt's chattel), aff'd mem., 407 F.2d 360 (2d Cir. 1969). *But see In re Alda Commercial Corp.,* 327 F.Supp. 1315 (S.D.N.Y.1971); Drake & Weems, *supra* note 6 (the authors conclude that a trustee in bankruptcy can reduce the claims of participants to the status of unsecured creditors).

10. "Partial assignments are effective without the consent of the obligor." MacDonald, *supra* note 9, at 46 (footnote omitted). Further, the presence of the repurchase option in the participation agreements does not convert the lead-participant relationship into a debtor-creditor relationship. *Id.* at 64 65.