FIRST NATIONAL BANK OF BELLEVILLE, Plaintiff-Appellant, v. CLAY-HENSLEY COMMISSION COMPANY *et al.*, Defendants-Appellees (First National Bank of Red Bud, Plaintiff).

Fifth District   No. 5—87—0101

Opinion filed June 10, 1988.

Freeark, Harvey, Mendillo & Dennis, of Belleville (Ted Harvey, Jr., and Ransom P. Wuller, of counsel), for appellant.

William P. Gavin and James E. Defranco, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Swift Independent Packing, Inc.

Robert F. Kaucher, of Kaucher & Ligman, P.C., of Belleville, for appellees Clay-Hensley Commission Company, Farmers Livestock Marketing Association and Interstate Producers Livestock Association.

Brad S. Denney, of Richard G. Reed, P.C., of Belleville, for appellee Weyhaupt Brothers Packing Company.

Judith A. Rau, of Rau & Rau, of Waterloo, for appellees Joe Van De Riet and Jim Van De Riet.

Patrick J. Hitpas, of Patrick J. Hitpas, P.C., of Carlyle, for appellees Dan Hugo and Mary Hugo.

JUSTICE WELCH delivered the opinion of the court:

This is an appeal from two orders entered in the circuit court of St. Clair County, the first of which dismissed First National Bank of Belleville as a party plaintiff in the underlying complaint, and the second of which denied their petition to intervene in the ongoing action of the First National Bank of Red Bud, previously a coplaintiff in the underlying action.

First National Bank of Belleville and First National Bank of Red Bud (Bank of Red Bud) filed a complaint on March 12, 1985, seeking recovery for conversion by the defendants of collateral which had been pledged to secure a loan in the amount of $650,000, loaned to Wayne Seibert by Bank of Red Bud on February 16, 1981. This pledge of collateral to secure the loan was documented in a collateral promissory note from Wayne Seibert to Bank of Red Bud entered into on February 16, 1981, and renewed on October 30, 1981. Bank of Red Bud recorded a financing statement in the recorder of deeds office in Monroe County, Illinois, on February 23, 1981. The sale from Wayne Seibert to the defendants of hogs which were part of the collateral securing the $650,000 loan prompted the underlying action.

First National Bank of Belleville's alleged interest in the above-stated lawsuit arose out of a participation agreement entered into by the Bank of Red Bud and the First National Bank of Belleville whereby Bank of Red Bud sold to First National Bank of Belleville a $450,000 share of the $650,000 Wayne Seibert loan. At no time did First National Bank of Belleville negotiate with or otherwise deal directly with Wayne Seibert or any of the defendants regarding the loan or collateral. The rights of First National Bank of Belleville, as a participant bank, were set out in the participation conditions attached to the participation agreement. These participation conditions reserved to the Bank of Red Bud, as the issuing bank, all loan servicing decisions and required that Bank of Red Bud "use the same degree of care and diligence that a bank would be expected to use in servicing a loan made on its own account; and if, having used such degree of diligence, a loss should occur, the Issuing Bank will not be responsible therefor."

The contentions presented by First National Bank of Belleville on

appeal are essentially two: (1) that the trial court erred in dismissing First National Bank of Belleville's complaint for failure to state a cause of action, and (2) that the trial court erred in denying First National Bank of Belleville's petition to intervene in the ongoing action of Bank of Red Bud. In neither of these contentions do we find merit.

The first order appealed from granted defendants' motion to dismiss under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), for failure to state a cause of action. A motion to dismiss under section 2—615 tests only the legal sufficiency of the complaint (*Interway Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615) and preserves for review only the legal sufficiency of the complaint. *Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 504 N.E.2d 193.

In the present case, First National Bank of Belleville alleged in its complaint that it had an interest in the promissory note and collateral securing the $650,000 loan to Wayne Seibert. This interest, First National Bank of Belleville alleged, arose by virtue of the fact that First National Bank of Belleville had become a participant in the loan. Therefore, according to First National Bank of Belleville, its action against the defendants for conversion of collateral securing the loan should not have been dismissed.

Whether the First National Bank of Belleville's complaint was properly dismissed requires a determination of whether an interest in the collateral securing a loan automatically inures to a participant bank, and whether a participant bank has a right of action under the participation agreement against anyone other than the lead bank. While we are aware of no Illinois case dealing with the interests of a participant bank in the collateral securing a loan in which the bank has become a participant, we find guidance in articles published in periodicals and in opinions of courts in other jurisdictions. See *e.g.,* Simpson, *Loan Participations: Pitfalls for Participants,* 31 Bus. Law. 1977 (1976); Armstrong, *The Developing Law of Participation Agreements,* 23 Bus. Law. 689 (1968); Ledwidge, *Loan Participations Among Commercial Banks,* 51 Tenn. L. Rev. 519 (1984); *In re Yale Express System, Inc.* (S.D.N.Y. 1965), 245 F. Supp. 790; *First State Bank v. Towboat Chippewa* (N.D. Ill. 1975), 402 F. Supp. 27; *Franklin v. Commissioner of Internal Revenue* (5th Cir. 1982), 683 F.2d 125.

■■ Alan W. Armstrong in *The Developing Law of Participation Agreements,* 23 Bus. Law. 689 (1968), states that "[a] true participation is a shared loan, an undertaking by one financial institution, usually called the 'lead,' to divide a large loan which it has or will put on its books into shares which it then offers for sale to other 'partici-

pant' financial institutions." (23 Bus. Law. at 689.) There are several practical reasons for participation agreements. According to David B. Simpson, in *Loan Participations: Pitfalls for Participants*, 31 Bus. Law. 1977 (1976), by selling participations financial institutions commonly seek to satisfy dual objectives of improving their liquidity and diversifying their risk. (31 Bus. Law. at 1977.) A situation appropriate for participation agreements arises when a borrower requests a loan in excess of the statutory ceiling on the amount that a lending institution may loan to any one borrower. Similarly, smaller banks may not be able to satisfy single-handedly a loan request for a substantial amount of money. In these situations a participation agreement is an expedient device whereby two or more lenders may pool their financial resources to provide the amount requested. See generally Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. 519, 521-23 (1984) (discussing practical reasons for use of participation agreements); see also Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. 447, 448-58 (1978), (covering the development of loan participations).

Alternatively, for purposes of maintaining good business relations with more than one bank, a borrower may insist that its loan be shared by several of its customary banks. Or, a bank may actively seek to become a participant to further its own interest in lending funds at terms and rates more favorable than those available to it through its own marketing efforts. These and other factors, singly and in combination, have resulted in the increasing popularity of interbank participations in the past 25 to 30 years. See Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. 447, 458 (1978).

While there are alternative multiple-bank lending procedures which satisfy many of the interests and purposes satisfied by a participation agreement, such as a single master credit agreement, the comparative ease with which the participation agreement is negotiated makes the arrangement highly attractive. (See Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. 519, 522-23 (1984).) By entering a participation agreement, a participant bank may enjoy a share of the benefits accompanying a loan without having to deal directly with the borrower, and without having to take on the burden of servicing the loan. Instead of lending a portion of a loan directly to the borrower, a bank may become a participant in a loan and provide the money to the lead bank, and include in the participation agreement a covenant requiring the lead bank to service the loan in a manner consistent with the participant's interests. Such a covenant may "includ[e] the conditions of and manner in which future dis-

bursements (in case of a construction or revolving loan) are to be made, the treatment of the collateral and any proceeds thereof, and of any funds received on account of the loan principal or interest, and the procedures to be followed in case of default." (Simpson, *Loan Participations: Pitfalls for Participants*, 31 Bus. Law. 1977, 1981 (1976).) Finally, the popularity of participation agreements is also partly due to the fact that participation agreements bypass much of the legal work involved in the transfer of an entire loan. Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. 447 (1978).

While case law and scholars converge on the preceding general principles regarding participation agreements, there is disparity between both case law and scholarly writings pertaining to whether a participant bank has legal rights arising out of the participation agreement against any parties other than the lead bank. On the one hand there is case law and writings supporting the proposition that a participant bank's rights under the participation agreement are limited as against only the lead bank. (See Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689 (1968) (participants can look solely to the lead for satisfaction of their claims because they are not themselves creditors of the borrowers and cannot assert creditor claims against the borrowers); see also *Franklin v. Commissioners of Internal Revenue* (5th Cir. 1982), 683 F.2d 125, 128 (terms of participation agreement govern participation relationship).) On the other hand there is case law and writings supporting the proposition that a participation agreement grants the participant rights against parties other than the lead bank. See Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. 447, 474 (1978) (participation should not be viewed as an assignment of proceeds only); see also *First State Bank v. Towboat Chippewa* (N.D. Ill. 1975), 402 F. Supp. 27, 33 (although the relations among leads and participants are governed by a participation agreement or certificate, in practice the purchaser of a participation buys an undivided share of the loan made by the lead and an undivided share of the collateral which secures the loan).

■ While a review of the various cases and writings lending authority on the subject of participation agreements does not disclose any single case which stands as conclusive or binding precedent in the instant case, such a review does provide sufficient information and reasoning to allow us to make a just decision. In the instant case, different from any reported cases with which this court is familiar, the participant bank joined as a party plaintiff in an action against third parties for conversion of collateral in which the lead bank had a secu-

rity interest. The participant alleged that the purchase by third parties of collateral in which it had a security interest was in violation of section 9—101 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—101). The trial court dismissed the participant bank as a party plaintiff for failing to state a cause of action, finding that the participant bank did not have a security interest in the collateral, and, therefore, could not bring an action for conversion of that collateral. We find the dismissal of the participant bank as a party plaintiff to be proper.

We agree with the court in *Franklin v. Commissioner of Internal Revenue* (5th Cir. 1982), 683 F.2d. 125, that the terms of the participation agreement govern the participation relationship. (683 F.2d at 128.) However, in many instances the terms of participation agreement do not fully define the relationship between the lead bank and participant banks. Although there exists a variety of interpretations regarding the relationship established between the parties to a participation agreement when the terms of the agreement do not specifically define the relationship, we find cogent reasoning for the interpretation offered in the previously cited article by Alan Armstrong. (Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689 (1968).) Armstrong states:

> "[W]hatever the provisions of the participation agreement, if the loan is indeed a participation and not a joint undertaking whereby several parties advance funds directly to the borrower and take in return either directly or through an agent-bank notes payable to each and individual portions of security, then one party—the lead—advances all funds, takes back all applicable notes and security, and in circumstances where filing is in order files as the only secured party.
>
> In the participation case the lead is the only secured party, and so far as the participated loan is concerned [the] lead is the only party empowered to collect it since [the] lead is the only party to whom it is owed. The participants can look only to their lead for satisfaction of claims arising out of the transaction; they are not themselves creditors of the borrower and so cannot assert creditor claims against the borrower. This is not to say that participants cannot enter into separate side contracts with the borrower providing for rights to set-off and the like ***.

* * *

This review suggests that the participant's partial and undivided interest in the borrower's note and underlying collateral

represents its security for a loan it really makes to the lead, not for the participation it purchases in the lead's loan to the borrower.

For this reason, the participant can look only to the lead for payment and cannot assert a claim against the borrower since in fact the participant is not legally related to the borrower at all." 23 Bus. Law. at 693-96.

In the instant case, First National Bank of Belleville relies on certain provisions of the participation conditions to support its contention that it does have an actionable interest in the collateral allegedly converted. These provisions include:

"1. *** The interests in the loan of the Issuing Bank and of all participants shall be on a parity.

\* \* \*

5. The issuing bank will not, without the prior written consent of each participant *** (b) release or substitute any collateral securing the loan ***.

6. All collateral at any time held by the Issuing Bank or by any participant, including after-acquired collateral, shall inure ratably to the benefit of the Issuing Bank and all participants."

While these provisions may be interpreted as granting First National Bank of Belleville an interest in the collateral, such an interest is limited as between the lead and the participants. The participation agreement did not assign or otherwise grant First National Bank of Belleville an interest in the collateral as against any parties other than the lead bank; therefore, First National Bank of Belleville has no interest in or right to possession of the collateral such that it may properly bring a cause of action for conversion. (*De St. Aubin v. Johnson* (1986), 151 Ill. App. 3d 184, 502 N.E.2d 360.) As stated by Alan Armstrong in the excerpt cited above, "the participant's partial and undivided interest in the borrower's note and underlying collateral represents its security for a loan it really makes to the lead *** [f]or this reason, the participant can look only to the lead for payment." 23 Bus. Law. at 696.

The duty of the lead to protect the interests of the participant in the collateral is set out in a paragraph of the participation conditions providing: "The [lead] Bank will undertake to service the loan, in which connection it will use the same degree of care and diligence that a bank would be expected to use in servicing a loan made on its own account." Although this provision may subject the lead to liability only for bad faith or possibly gross neglect (see Simpson, *Loan Participations: Pitfalls for Participants*, 31 Bus. Law. 1977, 1981

(1976)), that is what First National Bank of Belleville is owed under the terms of the agreement, and it is not now appropriate for us to rewrite the agreement on their behalf.

■ The second contention raised by First National Bank of Belleville on appeal is that its petition to intervene in the ongoing action of Bank of Red Bud should have been granted. A party seeking to intervene as a matter of right must show that he will or may be bound by the judgment and need not demonstrate rights that are sufficient to prevail. (*Schwechter v. Schwechter* (1985), 138 Ill. App. 3d 602, 486 N.E.2d 340; Ill. Rev. Stat. 1985, ch. 110, par. 2—408(a).) A party may also intervene at the court's discretion when a statute grants the party a conditional right to intervene, or when an applicant's claim or defense and the main action have a question of law or fact in common. (*Sankey Brothers, Inc. v. Guilliams* (1987), 152 Ill. App. 3d 393, 504 N.E.2d 534; Ill. Rev. Stat. 1985, ch. 110, par. 2—408(b).) The trial court's decision to grant or deny a petition to intervene will not be reversed on appeal absent a clear abuse of discretion. *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 415 N.E.2d 1034, *cert. denied* (1981), 451 U.S. 921, 68 L. Ed. 2d 312, 101 S. Ct. 2000.

In the present case, having previously determined that under the participation agreement First National Bank of Belleville could maintain a cause of action only against the lead bank, we find that the trial court properly denied First National Bank of Belleville's petition to intervene. While a party need not have a direct interest in the pending suit in order to intervene, the intervenor must stand to gain or lose by the direct legal operation and effect of a judgment in the suit. (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 112, 417 N.E.2d 1343, 1349.) If a party's interest is speculative or hypothetical, this does not constitute an interest sufficient to warrant intervention. (*In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 356 N.E.2d 195.) First National Bank of Belleville argues that because the Bank of Red Bud has contributed only $200,000 of the $650,000 loaned to the borrower, the Bank of Red Bud will not pursue the recovery of the collateral allegedly converted as zealously as First National Bank of Belleville, which contributed $450,000 of the $650,000 loaned. In light of the participation conditions attached to the participation agreement between Bank of Red Bud and First National Bank of Belleville, we find no merit in this argument.

As provided in the participation conditions, Bank of Red Bud agreed to service the loan with the same degree of care and diligence that a bank would be expected to use in servicing a loan made on its

own account. Further, the participation conditions required that upon receipt of any payment upon the loan on account of either principal or interest, Bank of Red Bud would remit to each participant such participant's proportionate share thereof. Because of this proportionate share requirement, Bank of Red Bud could only recover its $200,000 share of the loan if it also recovered the $450,000 participated by First National Bank of Belleville. While $200,000 is less than one half of $450,000, it is not an amount so diminutive as to make reasonable the conjecture that because Bank of Red Bud has only $200,000 at stake it will not zealously pursue the lawsuit. Finally, First National Bank of Belleville's contractual right to payment out of the proceeds of the underlying action does not give it standing to intervene. (*Slusarz v. Slusarz* (1958), 18 Ill. App. 2d 25, 151 N.E.2d 411.) Therefore we find that the Bank of Red Bud's representation in the cause of action offers "legally sufficient" representation of the First National Bank of Belleville's interests such that its petition to intervene was properly denied. *Wert v. Burke* (1964), 47 Ill. App. 2d 453, 457, 197 N.E.2d 717, 719.

For the foregoing reasons, the orders entered by the circuit court of St. Clair County are hereby affirmed.

Affirmed.

HARRISON, P.J., and KARNS, J., concur.