931 P.2d 1095

In re 115 Defendants.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of the North American Bank, an Arizona Corporation, Plaintiff–Appellee,

v.

Norman Ronald ADAMS, and Sylvia Darlene Adams, (CV 89–21668); Felix Conley Alfieri, (CV 89–15996); Robert Louis Boyd and Joann Boyd, (CV 89–16005); Carlen Consulting Group; Leonard Miller and Phyllis Miller, Carlos Wagner and Ann Wagner, (CV 89–16010); Cecil Weber Casterline, (CV 89–16009); Scott Weber Casterline, (CV 89–16011); Robert Allen Church and Jessica Rae Church, (CV 89–16038); James E. Connolly and Coleen Ann Connolly, (CV 89–16039); Jack Cook, (CV 89–16014); Raymond E. Daoust and Barbara A. Daoust, (CV 89–21672); John Edward Didicher and Betty Jo Didicher, (CV 89–16042); Kenneth A. Dregseth and Nellie Dregseth, (CV 89–16044); Michael J. Dugan and Grace A. Dugan, (CV 89–16041); Joseph Kenneth Enright and Ann Adelaide Enright, (CV 89–16040); Esther R. Escobedo, (CV 89–16046); Jon V. Eylands and Barbara R. Eylands, (CV 89–16016); James Russell Feltham and Joellen Feltham, (CV 89–16036); Donald Ralph Fox and Mary Jane Fox, (CV 89–16022); William H. Fuller and Precilla Fuller, (CV 89–16035); Manuel S. Galaviz, (CV 89–16034); David Gambee, (CV 89–16033); Edward R. Geiger and Edri C. Geiger,(CV 89–21673); Geornan Investment; George Gary Shoemaker; and Nancy Howard Shoemaker, (CV 89–21674); Robert Ronald Glick, (CV 89–16032); Roger Goldburg and Deborah Jean Goldburg, (CV 89–16030); Gary F. Green and Mary M. Green, (CV 89–16023); Glenn R. Hawkes and Yvonne Hawkes, (CV 89–16019); Houston Partners, 1984B, a General Partnership, (CV 89–21667); Robert T. Johnson, (CV 89–16026); Jim C. Johnstonbaugh and Jan Johnstonbaugh, (CV 89–16025); Benjamin Kehela and Elaine Kehela, (CV 89–15985); Bruce D. Kelley, (CV 89–15965); Gerda E. Klipfel, (CV 89–21676); Alan David Lane and Haven A. Lane, (CV 89–15966); Willard Steven Leeper and Martha A. Leeper, (CV 89–15967); Thomas Longust and Jacqueline Longust, (CV 89–15969); George Michael Looney and Sandra Looney, (CV 89–15980); Samuel F. Louke and Phyllis Avidan Louke, (CV 89–15984); Harold L. McInturf and Mary Ellen McInturf, (CV 89–15961); Robert E. McKeon and Joan McKeon, (CV 89–15963); Earl L. Marsh, (CV 89–15960); Rex R. Oates and Brenda G. Oates, (CV 89–15995); Frank C. Orey and Cherry L. Orey, (CV 89–15958); Arthur Lory Rakestraw, (CV 89–16049); Kenneth M. Rich and Paula A. Rich, (CV 89–16050); Ann O. Richmond, (CV 89–16051); Edgar M. Rodriguez, (CV 89–16052); Gordon Patrick Rogers and Charlene Porter Rogers, (CV 89–15973); Robert Rubenzik and Helen Rubenzik, (CV 89–15977); Alice Sample, (CV 89–15955); David Louis Shank and Sylvia Louise Shank, (CV 89–15972); Susan Lovett Slama, (CV 89–21679); David S. Smith and Nina F. Smith, (CV 89–21680); Smith Family Trust; James Wilson Smith and Lavon D. Smith, (CV 89–15957); J. Lowell Stilson and Mary Lou Stilson, (CV 89–15954); Jack Stoller, (CV 89–15993); Joseph Coleman Streater and Maryann E. Streater, (CV 89–15994); James C. Thayer and Hope A. Thayer, (CV 89–15950); Gregory D. Vacca and Marsha A. Vacca, (CV 89–15952); Harry Carl Watters and Stacia Watters, (CV 89–21681); Jimmy Lee Wolfe and Beverly Ann Wolfe, (CV 89–15983); Lonnie R. Woods and Diane Kay Woods, (CV 89–15986), Defendants–Appellants.

No. 1 CA–CV 94–0121.

Court of Appeals of Arizona, Division 1, Department E.

June 27, 1996.

Review Denied Feb. 26, 1997.

Jon R. Pozgay, Ltd. by Jon R. Pozgay, Phoenix, for Defendants–Appellants.

Robbins & Green, P.A. by Brian Imbornoni, Phoenix, for Plaintiff–Appellee.

Federal Deposit Insurance Corp. by Maria Beatrice Valdez, Washington, DC, Pro Hac Vice, for Plaintiff–Appellee.

# OPINION

PATTERSON, Judge.

This case involves the application of the doctrine derived from the U.S. Supreme Court's decision in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), codified in 12 U.S.C. § 1823(e) [1]. This doctrine gives special protection to assets acquired by the Federal Deposit Insurance Corporation ("FDIC") that are not available to ordinary holders of commercial paper. Here, FDIC in its capacity as receiver is seeking to recover under a promissory note executed by the defendants. We must determine whether FDIC may invoke the *D'Oench* doctrine to exclude defenses raised by the defendants based on evidence that is not reflected in the lending bank's records.

## I. FACTS

In 1984, John McDonnell met with David Lee, the Executive Vice President of North American Bank ("NAB"), to discuss a loan for the financing of a partnership to be formed under the name Agri–Tech Limited Partnership ("the Partnership"). Lee informed McDonnell that the proposed loan of approximately $4 million was in excess of NAB's lending limits.

NAB, however, agreed to provide the loan by obtaining individual promissory notes from the limited partners of the Partnership. Each individual partner signed a full recourse promissory note ("the Note") containing an unconditional promise to pay NAB in the amount and on the terms stated in the Note. Additionally, each limited partner executed a revocable power-of-attorney which

---

1. Section 1823(e) provides:

 Agreements against interests of [FDIC] Corporation

 (1) In general

 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

 (A) is in writing,

 (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

 (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

 (D) has been, continuously, from the time of its execution, an official record of the depository institution.

authorized NAB to pay those loan proceeds directly to the Partnership. The proceeds were then deposited into the Partnership's bank account. NAB ultimately approved 126 loans for $4,432,000, and the Partnership sold 126 limited partnership interests.

NAB was later examined by the FDIC acting in its corporate capacity as deposit insurer and regulator ("FDIC Corporate"). FDIC Corporate determined that the Partnership loans violated NAB's legal lending limits. A loan is attributed to another person when the proceeds of the loan are to be used for the benefit of that other person. 12 C.F.R. § 32.5(a)(1). During that examination, FDIC Corporate determined that the Notes "were advanced for the benefit" of the Partnership and required NAB to treat the loans as a single loan.

On February 26, 1986, in response to the FDIC examination, NAB entered into a loan participation agreement with United Bank of Arizona ("United Bank"). This agreement reduced NAB's overall exposure on the loans from almost $4 million to $1 million, and provided that United Bank's interest would be paid in full before NAB received payment. United Bank's participation in the loans was subsequently acquired by Standard Chartered Bank ("Standard Chartered"). On January 8, 1988, the Superintendent of Banks for the State Banking Department found NAB to be in an unsafe and unsound condition that justified putting NAB into receivership. NAB was closed, and FDIC was appointed as the receiver by the Maricopa County Superior Court.

## II. PROCEDURAL HISTORY

FDIC, acting in its capacity as receiver of NAB, initiated 121 separate actions on the Notes executed by the limited partners of the Partnership. The actions were consolidated by the trial court and the limited partners were designated as the "115 Defendants." The defendants filed a motion to dismiss for failure to join Standard Chartered as an indispensable party. The trial court denied the motion.

FDIC then moved for summary judgment, arguing that the *D'Oench* doctrine precluded the defendants from (1) asserting evidence of discharge, release and novation of the obligation under the Notes and (2) arguing that FDIC Corporate's regulatory treatment of the Notes affected the defendants' obligation to repay. In granting summary judgment for FDIC, the trial court determined that although the *D'Oench* doctrine was not applicable, the defendants had not presented sufficient evidence to create material issues of fact on the commercial law theories of discharge, release or novation.

## III. DISCUSSION

### A. Standard of Review

■ On review of summary judgment, we view the evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in favor of that party. *AROK Constr. Co. v. Indian Constr. Services,* 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993). Summary judgment is appropriate where "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We review the grant of summary judgment *de novo. Riley, Hoggatt & Suagee, P.C. v. English,* 177 Ariz. 10, 12, 864 P.2d 1042, 1044–45 (1993).

### B. D'Oench Doctrine

■ We first address the threshold issue whether the *D'Oench* doctrine is applicable under these facts. FDIC correctly points out that its power to enforce a debt instrument acquired from a failed financial institution is determined by federal law. *See* 12 U.S.C. § 1819; *D'Oench,* 315 U.S. at 457, 62 S.Ct. at 679; *FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448, 1450–51 (9th Cir.1992); *FDIC v. Meo,* 505 F.2d 790, 793 n. 4 (9th Cir.1974).

■ The *D'Oench* doctrine is a federal common law rule of estoppel which precludes the defendants from asserting defenses or claims against the FDIC based on unwritten agreements between the defendants and

NAB. *See D'Oench,* 315 U.S. at 459–60, 62 S.Ct. at 680–81. The purpose of the doctrine is to enable the FDIC to enforce agreements between failed banks and their borrowers in strict accordance with the terms of the loan documents. *Id.* at 459–62, 62 S.Ct. at 680–82. The general rule derived from *D'Oench* and its progeny provides:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Resolution Trust Corp. v. Foust,* 177 Ariz. 507, 517, 869 P.2d 183, 193 (App.1993) (citations omitted).

The defendants assert three grounds precluding the application of the *D'Oench* doctrine: (1) it is inapplicable under the innocent borrower exception; (2) because NAB extinguished the debts of the "115 Defendants" under Arizona commercial law, there is no valid obligation upon which FDIC may collect; and (3) FDIC by its regulatory treatment of the Notes is estopped from asserting any right to collect.

### 1. Innocent Borrower Exception

The defendants argue that the facts of this case are "diametrically opposed" to those in *D'Oench* because there is no oral agreement that was kept from the FDIC upon which they now attempt to rely. Specifically, the defendants contend that they took no part in any scheme to deceive bank regulators and were never party to a secret agreement with NAB.

The defendants maintain that the Ninth Circuit has taken a very restrictive view of the *D'Oench* doctrine—applying the doctrine only where the maker of the note lent himself to a scheme that had the effect of misleading the FDIC. The defendants, relying on *Meo,* argue that this circuit will not apply the doctrine in a case such as this, where the borrower is "wholly innocent" of any wrongdoing or negligence. 505 F.2d at 793.

FDIC counters this by arguing that *Meo* is distinguishable. In *Meo,* the borrower gave the bank a promissory note in exchange for stock which the bank was to hold as security. The stock was never issued, and the borrower did not discover this fact until after the bank failed and FDIC sought to recover on the note. The court held that under the "special facts" of the case, the borrower was not estopped from asserting a defense against the enforcement of the obligation by the FDIC because he was innocent of any wrongdoing or negligence. *Id.* The court further stated that the doctrine is inapplicable where the borrower has engaged in "ordinary and good-faith transactions." *Id.*

FDIC further contends that the defendants have "turned a blind eye to the barrage of recent Ninth Circuit cases which hold that *Meo* does not apply where—as here—the borrowers failed to obtain explicit written documentation of the agreement upon which they base their claim or defense." *See, e.g., Notrica v. FDIC,* 2 F.3d 961, 966 (9th Cir. 1993); *In re Century Centre Partners, Ltd.,* 969 F.2d 835, 839 (9th Cir.1992), *cert. denied, Century Centre Partners, Ltd. v. FDIC,* 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 690 (1993); *Zook Bros.,* 973 F.2d at 1452; *Newton v. Uniwest Financial Corp.,* 967 F.2d 340, 345 (9th Cir.1992); *Federal Sav. and Loan Ins. Corp. v. Gemini Management,* 921 F.2d 241, 245 (9th Cir.1990). The purpose of this doctrine is to bar the use of an extrinsic agreement which defeats or diminishes the FDIC's interest in an asset unless the document meets the writing, execution, approval and filing requirements of 12 U.S.C. § 1823(e). *See Foust,* 177 Ariz. at 517, 869 P.2d at 193 ("any agreement that does not meet certain standards of formality as described in 12 U.S.C. § 1823(e) cannot support a claim against the receiver....").

■ We agree with FDIC that the facts of this case "belie [defendants'] cries of innocence." The defendants signed the individual loans to conceal the fact that the loan was in violation of NAB's lending limits. They now seek release from liability under the Notes based on the affidavits of the Partnership's officers and an unauthenticat-

ed, unsigned letter purportedly written by members of NAB's Board of Directors. The defendants, however, have never obtained a written release and have not offered any evidence which meets the requirements of § 1823(e) to create a material issue of disputed fact. *See Gemini Management*, 921 F.2d at 245 (debtor may not rely on anything but a "clear and explicit written obligation").

### 2. State Law Defenses

The defendants next argue that FDIC is estopped from asserting any right to collect on the Notes because they were discharged, prior to receivership, under Arizona law governing commercial relationships. If there was a discharge of the debt, the defendants argue, there was no asset in existence at the time the FDIC stepped into the shoes of NAB as receiver. Consequently, the defendants contend, there is nothing in the *D'Oench* doctrine which bars this defense.

In support of this argument, the defendants submit that the actions of the Partnership were sufficient to establish that the Partnership was substituted as the sole obligor on the Notes. The defendants contend that the actions of the Partnership could be deemed to have ratified its obligation to NAB. They argue that a note substituting the Partnership as obligor was never executed because given the course of dealing, the parties believed that a substitution had, in fact, occurred.

■ It is well-settled that borrowers are precluded from disproving the existence of an "asset" by resort to evidence that does not meet the stringent standards of § 1823. *Notrica*, 2 F.3d at 964–65; *Zook Bros.*, 973 F.2d at 1452–53. This court, in *Foust*, considered a "no-asset" argument. In that case, the borrower, citing some of the same cases as these defendants, argued that *D'Oench* and § 1823(e) did not apply because the assets at issue were void.

■ This court distinguished those cases on the basis that the "lower courts had voided the assets upon which the FSLIC or FDIC based its claim." *Foust*, 177 Ariz. at 518, 869 P.2d at 194. Because the assets at

issue in *Foust* had not been judicially voided, the court held that the Receiver acquired a right, title, or interest in an asset that triggered the application of *D'Oench* and § 1823(e). Similarly, because the Notes at issue here have not been judicially voided, and because the Notes cannot be proven invalid without resort to evidence precluded by § 1823(e), the FDIC has acquired an "asset" within the meaning of § 1823(e).

The Eleventh Circuit's decision in *FDIC v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634 (11th Cir.1984), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984), was cited with approval, as the "seminal case on the 'no asset' exception," in *Zook Bros.*, 973 F.2d at 1452. In *Merchants*, the FDIC brought suit to collect on a loan acquired from a failed bank by FDIC Corporate. The defendant sought to define the asset by arguing that an ambiguity existed in the bank records and then attempted to resolve the ambiguity with evidence which failed to meet the stringent requirements of § 1823(e). The court recognized a narrow exception to the *D'Oench* doctrine where the asset is "invalid for fraud, ... or for breach of bilateral obligations contained in the asset," because, "in such cases the parties contend that no asset exists or an asset is invalid and that such invalidity is caused by acts independent of any understanding or side agreement." *Id.* at 639. The court rejected defendants' argument and stated:

> Congress did not intend that Sec. 1823(e) be avoided in this manner; [Defendant's] construction would drain substantial vitality from Sec. 1823(e), as applied to this case, by throwing into question the very records of the bank that the statute entitles FDIC to consider and rely upon.

Similarly, in the instant matter, the defendants' case can only be made by an inference that the conduct of NAB was intended to substitute the Partnership as obligor on the Notes—although there is no document in NAB's files which states that the obligation was terminated. The defendants may not avoid application of the *D'Oench* doctrine by resorting to commercial law defenses which seek to show a discharge of the Notes through acts independent of the bank rec-

ords and thereby calling into doubt those records.

### 3. FDIC Is Not Estopped By Its Own Actions

The defendants next argue that FDIC Corporate deemed the bank advances to be a single loan to the Partnership and required NAB to treat the Notes as a single loan. Consequently, defendants argue, the public policy behind the doctrine—protecting the FDIC from schemes which mislead it—is not implicated here because the FDIC's own actions and requirements were relied upon. We disagree.

FDIC's regulatory treatment of the loans in its capacity as bank examiner do not alter the debtor's contractual obligation. Banking statutes prohibit banks from loaning a single person or entity an amount greater than 15% of the bank's unimpaired working capital. *See* 12 U.S.C. § 84. This is to prevent one individual or entity from borrowing an unduly large amount of the bank's funds. *See* 12 C.F.R. § 32.1. In making this determination, a loan is attributed to another person when the proceeds of the loan are to be used for the direct benefit of the other person. *See* 12 C.F.R. § 32.5(a)(1). In the case of partnerships, loans to the members of a partnership will be attributed to the partnership when the proceeds of the loans are to be used for the direct benefit of the partnership. *See* 12 C.F.R. § 32.5(a)(1) and (c)(2).

Here, FDIC Corporate, in its August 1995 examination, concluded that the loans were advanced for the benefit of the Partnership. Because the aggregate amount of the loans exceeded 15% of NAB's capital account, the bank was cited for a violation of its legal lending limits. It was also listed as a hazardous concentration of credit because the expected source of repayment of the loans was from the Partnership income. While the effect of FDIC Corporate's regulatory treatment of the loans was a finding that the loans violated NAB's legal lending limits, this determination does not provide the borrower with a defense to payment of the Notes. *Seattle–First Nat'l Bank v. FDIC,* 619 F.Supp. 1351, 1363 (W.D.Okla.1985); *State ex rel. Conway v. Versluis,* 58 Ariz.

368, 379, 120 P.2d 410, 415 (1941); *Schneider v. Thompson,* 58 F.2d 94, 99 (8th Cir.1932); *Union Gold–Mining Co. of Colorado v. Rocky Mountain Nat'l Bank of Central City,* 96 U.S. 640, 642, 24 L.Ed. 648 (1877).

As FDIC correctly points out, the FDIC Receiver is not responsible for the regulatory treatment of the loans by FDIC Corporate. FDIC Corporate is a distinct legal entity from FDIC as receiver for a failed bank. In other words, the actions of FDIC Corporate will not support a defense against the FDIC Receiver. *See, e.g., FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986); *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir. 1971).

FDIC further notes that it would be grossly unfair to NAB's uninsured depositors and creditors—on whose behalf the NAB receivership operates—to impute to FDIC Receiver the actions of FDIC Corporate's bank examiners. As Receiver, the FDIC stands in the shoes of the failed bank. The failed bank is not responsible for, and therefore cannot be held accountable for, the actions of FDIC Corporate. Accordingly, the FDIC Receiver may enforce the Notes in accordance with the provisions of federal law irrespective of any regulatory action taken by the FDIC Corporate as deposit insurer and regulator.

*Merchants* directly addressed this issue and stated:

> [k]nowledge of FDIC is irrelevant.... The statute prescribed the requirements an agreement must meet to be valid against FDIC. If a side agreement does not meet the requirements of Sec. 1823(e), FDIC's knowledge of the terms of that side agreement does not render it valid against FDIC or estop FDIC from enforcing the agreement as contained in the failed bank's records.

725 F.2d at 640; *see also FDIC v. De Jesus Velez,* 678 F.2d 371, 375 (1st Cir.1982); *FDIC v. First Mortgage Investors,* 485 F.Supp. 445, 451–52 (E.D.Wis.1980). The court further noted that sound policy reasons dictate against holding FDIC liable for its knowledge of side agreements as well as the hidden meaning of bank assets.

In the ordinary course of business, examiners from FDIC's open-bank division regularly visit all insured banks and even more frequently visit failing banks. If in undertaking a purchase and assumption transaction FDIC's closed-bank division were held to matters of which the open-bank examiners had actual knowledge, but beyond the scope of section 1823(e), the protection of section 1823(e) would be lost. Any asset would be subject to challenge based on the alleged knowledge of bank examiners. The resulting uncertainty would undercut FDIC's ability to value assets quickly and precisely when conducting a purchase and assumption transaction.

725 F.2d at 640; *see also Gunter v. Hutcheson*, 674 F.2d 862, 865 (discussion of the speed with which FDIC must act to "preserve the going concern value of the failed bank and avoid interruption in banking services.") This authority and policy is persuasive, and we therefore find that, under the facts in this case, FDIC in its regulatory capacity is not estopped by the actions of FDIC Corporate.

## IV. COLLATERAL ESTOPPEL

In a prior related lawsuit, the Partnership as plaintiff sought a determination of its rights and obligations under the loan made by NAB. *Agri–Tech Ltd. v. North American Bank*, CV 89–145, 1990 WL 210645 (Ariz. App., Dec. 20, 1990), *rev. denied, depublished* (June 4, 1991). Specifically, it sought a determination of whether the bank's loan was to it or to the individual limited partners.

The defendants now contend that the trial court was precluded from deciding liability under the notes because this court decided in the prior action that the *D'Oench* doctrine was not applicable. In that related action, FDIC sought summary judgment on two grounds. It first argued that the limited partners were indispensable parties and the case should be dismissed in their absence. FDIC next argued that the *D'Oench* doctrine estopped the Partnership from denying that the loans were made to the individual partners.

This court reversed and remanded because the indispensable party issue was an unresolved threshold question. The court further stated, "[i]n the interests of judicial economy, we will address the two remaining issues presented by this appeal to provide guidance to the trial court on remand in the event the court determines that the action may proceed, either with or without the absent limited partner." The FDIC filed a petition for review of this court's decision. The supreme court denied review but depublished this court's opinion pursuant to Arizona Rules of Civil Appellate Procedure 28(a).

 It is well-settled that a depublished opinion has no precedential effect and cannot be cited as authority in any court. Ariz. R.Civ.App.P. 28(c)(f); *State Farm Mutual Automobile Ins. Co. v. Davis*, 937 F.2d 1415, 1421 n. 4 (9th Cir.1991). That rule, however, does not change the collateral estoppel effect of the decision. *Id.* Rule 28(c) specifically allows the citation of memoranda decisions "for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case."

 "Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Chaney Building Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); Restatement (Second) of Judgments § 27 (1982).

 Collateral estoppel is not applicable to the instant matter because the *D'Oench* issue was never fully litigated. This court stated that the *D'Oench, Duhme* doctrine was inapplicable, but instructed the trial court to make the evidentiary ruling on the admissibility of the letter. On remand, the litigation was dismissed for lack of prosecution.

We further note that this court's comments, in the related action, regarding *D'Oench, Duhme*, were offered to provide guidance and were not essential to the

court's determination of the threshold issue. The primary issue before the court was whether summary judgment was improper because of the failure to join an indispensable party. The court determined that issue, reversed summary judgment and remanded the matter to the trial court for further proceedings. The determination of whether the *D'Oench* doctrine was implicated was not necessary to the resolution of the threshold indispensable party issue.

## V. FAILURE TO JOIN INDISPENSABLE PARTY

The defendants argue that Standard Chartered was a real party in interest and should have been joined pursuant to Rule 17(a) of the Arizona Rules of Civil Procedure. Specifically, they contend that while Standard Chartered, in form, was a mere participant, the economic reality and substance of its involvement with NAB indicates otherwise.

FDIC argues that a participation relationship is governed by the terms of the participation agreement. Accordingly, it submits that the rights of a participant bank are only against the lead bank because there is no legal relationship between the participant and the borrower.

 "A true participation is a shared loan, an undertaking by one financial institution, usually called the 'lead,' to divide a large loan which it has or will put on its books into shares which it then offers for sale to other 'participant' financial institutions." *First Bank of WaKeeney v. Peoples State Bank*, 12 Kan.App.2d 788, 790, 758 P.2d 236, 238 (1988) (quoting Alan W. Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689, 689 (1968)). In the traditional participation, the lead bank originates and consummates the loan and retains all loan documents. Armstrong, *supra*, at 690–91. The participant bank may then enjoy the benefits accompanying a loan without having to deal directly with the borrowers or the responsibility of servicing a loan. *First Nat'l Bank of Belleville v. Clay–Hensley Comm'n Co.*, 170 Ill.App.3d 898, 902, 525 N.E.2d 217, 220, 121 Ill.Dec. 411, 414 (1988).

 The participant bank, however, does not generally acquire legal title to the loan. *See, e.g., Belleville*, 170 Ill.App.3d at 904–05, 525 N.E.2d at 221–22, 121 Ill.Dec. at 415–16. This is because "[t]he participants can only look to their lead [bank] for satisfaction of claims arising out of the transaction; they are not themselves creditors of the borrower and so cannot assert creditor claims against the borrower." *Id.* at 904, 525 N.E.2d at 221, 121 Ill.Dec. at 415 (quoting Armstrong, *supra*, at 693); *see also Hibernia Nat'l Bank v. Federal Deposit Ins. Corp.*, 733 F.2d 1403, 1407 (10th Cir.1984).

 The rights of "the participant bank flow not from the participation relationship itself but from the express terms of the specific agreement." *First Bank of Wakeeney*, 12 Kan.App.2d at 790, 758 P.2d at 238; *see also First Citizens Federal Savings and Loan Ass'n v. Worthen Bank and Trust Co., N.A.*, 919 F.2d 510, 513–14 (9th Cir.1990) (the language of the loan participation agreement should govern the participation relationship); *Franklin v. Commissioner of Internal Revenue*, 683 F.2d 125, 128 (5th Cir.1982) (same). Courts have held that the relationship between the lead bank and the participant is contractual and will generally be enforced according to its terms. *First Bank of Wakeeney*, 12 Kan.App.2d at 790, 758 P.2d at 238; *cf. Interfirst Bank Abilene v. Federal Deposit Ins. Corp.*, 777 F.2d 1092, 1094 n. 1 (5th Cir.1985) (the specific language of the participation agreement makes it unnecessary for the court to enmesh itself in the arcane issues surrounding the construction of the agreements). Here, the terms of the Loan Participation Agreement provide that NAB sold approximately 75% undivided interest in the Notes to United Bank, which was evidenced by a Non–Negotiable Participation Certificate. That certificate acknowledged United Bank's purchase of "a Participation in 126 separate loans," and contained a listing of each individual borrower and his or her loan amount.

The agreement further provides that: NAB "is the owner and holder of the Loan Documents"; "NAB shall receive all payments of principal and interest on the Loans, shall distribute said amounts in accordance

with this Agreement, and shall otherwise service the Loans on behalf of both [NAB] and Participant." "It is expressly understood that the purchase of the Participation hereunder is without recourse to [NAB], and Participant hereby agrees to look solely to its Participation interest for the recovery of any sums due and payable pursuant to the terms of this Agreement." "Any legal action taken to enforce any Borrower's obligation in connection with a loan shall be taken in the name of [NAB] only."

On February 14, 1989, after FDIC was appointed as Receiver, it entered into an agreement with Standard Chartered entitled: "Appointment of Servicing and Collection Agent and First Amendment to Loan Participation Agreement." Under the Loan Participation Agreement, the FDIC Receiver "is the holder of the documents." It further provides that Standard Chartered, as Participant, shall "service the loans as the agent of the Receiver on behalf of both Receiver and Participant," and that "[a]ny and all [collection] actions, including appropriate legal proceedings against one or more of the borrowers, shall be brought by Participant on behalf of and in the name of the Receiver."

The defendants assert that through the modification, FDIC has essentially reversed the positions of the parties by appointing Standard Chartered as its servicing and collection agent. Thus, they submit that it would be inequitable to allow Standard Chartered to obtain protection available to the FDIC under the *D'Oench* doctrine. FDIC contends that the modified agreement establishes an agency relationship between Standard Chartered and the FDIC, and does not provide Standard Chartered with a direct right of action against the defendants.

■ As FDIC correctly points out, Standard Charter's rights and obligations arise solely out of its contractual relationship with FDIC. FDIC's contractual relationship with Standard Chartered and its delegation of collection responsibility does not alter the FDIC's legal relationship with the defendants, nor does it impair the operation of its special defense avoidance powers. *See Kilpatrick v. Riddle,* 907 F.2d 1523, 1528 (5th Cir.1990) (protection under *D'Oench* doctrine

extends to "assignees of the FDIC"); *see also FDIC v. Newhart,* 892 F.2d 47 (8th Cir.1989) (protected status of FDIC on notes it holds transfers to subsequent purchasers of notes).

■ Although we agree that the FDIC has altered the "traditional" role of the participant, the FDIC is still the owner and holder of the Notes, and it is only the FDIC that may bring suit to collect on the Notes. Accordingly, it is only the FDIC that has a contractual relationship with the defendants. Because Standard Chartered has no legal relationship with the defendants and therefore may not maintain an action against them in its own name, we find no error in the trial court's determination that Standard Charter was not a real party in interest.

## VI. ATTORNEYS' FEES

The defendants challenge the trial court's award of attorneys' fees on the basis that Standard Chartered, not the FDIC, incurred the majority of the legal fees. The FDIC responds that it is entitled to recover "reasonable attorneys' fees" pursuant to the Note signed by the defendants.

■ A contractual provision for attorneys' fees will be enforced according to its terms. *First Fed. Sav. & Loan Ass'n v. Ram,* 135 Ariz. 178, 181, 659 P.2d 1323, 1326 (App.1982). Here, the Note provides to "the holder hereof upon demand any and all costs, expenses and fees in enforcing payment hereof, including reasonable attorneys' fees...." Having determined that Standard Chartered is not a real party in interest, but rather an agent of the FDIC, we find no error in the trial court's award of fees to the FDIC pursuant to the contractual provision in the Note.

The FDIC also requests attorneys' fees incurred on appeal pursuant to Arizona Rules of Civil Appellate Procedure 21(c) in accordance with the terms of the Note. We grant the request subject to its compliance with Rule 21.

## VII. CONCLUSION

Because the *D'Oench* doctrine applies, the defendants are precluded from raising defenses that do not meet the requirements of 12 U.S.C. § 1823(e). The trial court did not err in ruling that they failed to raise material issues of fact to withstand summary judgment on the issue of liability under the Notes. The trial court properly determined that this issue of liability was not precluded, and that Standard Chartered was not an indispensable party. We also affirm the award of attorneys' fees by the trial court and award attorneys' fees in accordance with the terms of the Note signed by the defendants. The decision of the trial court is therefore affirmed.

GRANT, P.J., and WEISBERG, J., concur.