(758 P.2d 236)

No. 60,789

FIRST BANK OF WAKEENEY, *Appellant*, v. PEOPLES STATE BANK, *Appellee.*

Petition for review denied September 27, 1988.

Opinion filed July 15, 1988.

*Allen Shelton,* of Clark, Shelton & Pratt, P.A., of Hill City, for the appellant.

*Richard L. Cram* and *Jerry D. Fairbanks,* of Fairbanks & Rigor, P.A., of Goodland, for the appellee.

Before ELLIOTT, P.J., GERNON, J., and DAVID W. KENNEDY, District Judge, assigned.

KENNEDY, J.: First Bank of WaKeeney (First Bank) appeals from a judgment interpreting four loan participation certificates.

On May 10, 1982, First Bank signed three certificates of participation contributing to three loans made by Peoples State Bank of Sharon Springs (Peoples) to Sand Creek Farms. On March 31, 1983, First Bank signed four certificates of participation which represented renewals of the 1982 loans. The trial court found First Bank's total participation in the four loans amounted to $144,763.83. First National Bank of Goodland also participated in all of these loans. All of the loans were secured and due on January 5, 1984.

The language in the 1983 certificates differs from the 1982 certificates, yet these certificates were the only documents executed by the parties. For some reason that does not appear in the record, there were no participation agreements which set forth the parties' respective rights and duties.

The Sand Creek loan was not repaid by the due date. Sometime before March 13, 1984, First Bank received a cease and desist order stating that it could not advance, renew, or extend any lines of credit that were already on its books without first collecting the interest on the Sand Creek credit lines.

On March 13, 1984, representatives of the three banks involved held a meeting to discuss the Sand Creek loans. Peoples and the First National Bank of Goodland wanted to extend the line of credit. At that meeting, First Bank indicated that it could not agree to extend the line of credit because of the cease and desist order. First Bank did not specifically request foreclosure or liquidation of the security pledged for the loans. The trial court found that the parties agreed to continue with the line of credit but that First Bank could not be involved in advancing additional funds because of the cease and desist order. In a letter dated June 4, 1984, First Bank requested Peoples to buy out its participation interest.

First Bank subsequently informed Peoples several times that it would not participate in an extension of the loans. Over First Bank's objections, Peoples and the First National Bank of Goodland agreed to extend the loans until November 1984.

On December 12, 1984, First Bank filed a petition against Peoples alleging four causes of action involving disputes over various loan agreements. At the time of trial, the parties announced that they had settled three of the causes and that First Bank owed Peoples $27,152. Trial on the fourth cause of action,

involving the extension of the Sand Creek credit line, was held before the court. First Bank sought relief from the court in the form of damages for Peoples' failure to terminate First Bank's interest in the loan at the time of due date. Judgment was entered in favor of Peoples. First Bank timely appeals.

The question of a participant bank's rights in enforcing a loan is an issue of first impression in Kansas.

"A true participation is a shared loan, an undertaking by one financial institution, usually called the 'lead', to divide a large loan which it has or will put on its books into shares which it then offers for sale to other 'participant' financial institutions." Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689 (1968).

"[Participation] agreements are simultaneously an assignment of an interest in an intangible right, a contract that prescribes duties of servicing the loan, and a document that creates an agency." Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. 519, 520 (1984).

The participant bank has no legal relationship with the borrower. The borrower's and participant's relationships are solely with the lead bank. Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. at 528. See *Hibernia Nat. Bank v. Federal Deposit Ins. Corp.*, 733 F.2d 1403, 1407 (10th Cir. 1984).

The rights of the participant bank flow not from the participation relationship itself but from the express terms of the specific agreement. Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. at 525. See *Hibernia Nat. Bank v. Federal Deposit Ins. Corp.*, 733 F.2d at 1408 (citing *Franklin v. C.I.R.*, 683 F.2d 125 [5th Cir. 1982]); *Northern Trust Co. v. Federal Deposit Ins. Corp.*, 619 F. Supp. 1340, 1341 (D. Okla. 1985); *Clinton Fed. S. & L. v. Iowa-Des Moines Nat.*, 391 N.W.2d 712, 716 (Iowa App. 1986); Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689. See Tompsett, *Interbank Relations in Loan Participation Agreements: From Structure to Workout*, 101 Banking L.J. 31, 32-33 (1984). The parties to a participation agreement may contract to whatever terms they wish. Any such contract will generally be enforced as to its terms. Authorities state that a participating bank wanting control over decisions affecting modification or collection of loans, or seeking a right to demand repurchase by the lead bank, must explicitly provide for that control in the participation agreement. R. Nassberg, The Lender's Handbook 45 (1986);

Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. at 525; Tompsett, *Interbank Relations in Loan Participation Agreements: From Structure to Workout*, 101 Banking L.J. at 32; and Armstrong, *The Developing Law of Participation Agreements*, 23 Bus. Law. 689.

There are many reasons for banks to participate in loans. One of the most important reasons is that it allows the lead bank to make a loan which is greater than its lending authority. The trial judge found this to be the primary reason for these participation agreements. If the participant bank's agreement with the lead bank requires the lead bank to buy out the participant bank's interest upon request, then the lead bank may be required to carry the entire amount of the loan on its books and the loan may exceed its lending authority. Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn. L. Rev. at 521-22, 525.

Courts have indicated in dicta that, in the absence of a negotiated contract term, the lead bank exercises sole control over the collection and enforcement of the loan. In *In re Yale Express System, Inc.*, 245 F. Supp. 790, 792 (S.D.N.Y. 1965), the court stated that any right to control the extension of the loan periods lie with the lead bank unless modified by the participation agreement. In *Carondelet S. & L. Ass'n v. Citizens S. & L. Ass'n*, 604 F.2d 464, 469 (7th Cir. 1979), the court stated that, unless the agreement imposed an obligation on the lead bank to foreclose in the event of default, the lead bank owed no enforcement duties to participating banks. We find this dicta to be persuasive and adopt it as our holding.

The extension of a loan period does not change the character of the loan. "A renewal of a loan . . . does not create a new obligation independent of the old one." 9 C.J.S., Banks and Banking § 396. See *Fourth National Bank v. Hill*, 181 Kan. 683, 695, 314 P.2d 312 (1957).

In the present case, the certificates of participation addressed only First Bank's right to take a pro rata share of collections and losses on the loan. Paragraph III states:

"In the event of the default by Borrower, Participant shall, subject to all the conditions hereof, bear its proportionate share of the (a) risk of loss, and (b) the costs and expenses, inclusive of reasonable attorneys' fees incurred in undertaking to collect the loan . . . ."

No mention is made in the certificates of repurchase rights,

foreclosure rights, or allocation of decision-making powers among the three banks involved in the loan.

One authority states that the agreement should establish criteria for the declaration of default or acceleration or the granting of waivers, consents, and modification. "The practicality of the matter nonetheless operates to discourage any requirement of total unanimity of action, as such requirements are an invitation to impasse, a situation that can be abused by the small-percentage participant seeking, by a display of intransigence, to force a takeout after a default." R. Nassberg, The Lenders Handbook 45 (1986). In the present case, two of the three banks involved favored extending the loan period, while only First Bank sought foreclosure or repurchase.

In *Carondelet*, 604 F.2d at 470, the court stated, "[I]t is manifest that in the context of a participation agreement some party must have the authority to decide whether to modify or to foreclose." The court noted that where nothing in the agreement specifies which bank possesses such authority, the authority vests in the lead bank.

First Bank contends that such an interpretation creates a perpetual contract. This contention is without merit. Peoples has a duty to exercise reasonable care in handling the loan. *Franklin v. C.I.R.*, 683 F.2d at 128 and *Carondelet*, 604 F.2d at 469. This duty does impose some limit on Peoples' conduct; however, a court may not rewrite the participation agreement to give the participant greater control. *Hibernia Nat. Bank v. Federal Deposit Ins. Corp.*, 733 F.2d at 1408.

First Bank further contends that because the prior certificates stated that the participation was accepted "without recourse," while these words were omitted in the present certificates, Peoples abandoned certain rights of control over the loan. A court may look to past business dealings to interpret an ambiguous participation agreement. *Clinton Fed. S. & L. v. Iowa-Des Moines Nat.*, 391 N.W.2d at 716-17.

In the present case, there is no ambiguity in the certificates. They do not purport to grant First Bank any right in collections. Furthermore, the prior agreement stated that Peoples agreed to "use the same degree of care in servicing said loan as it would if said loan had been made for its own sole account." In omitting these words from the present certificates, the parties have re-

duced Peoples' contractual obligation to First Bank. Nothing in the certificates of participation either limited Peoples' power to extend the loan periods or created rights in First Bank to excuse itself from the loan.

As its final issue, First Bank argues that the trial court erred in holding that Peoples did not owe it a fiduciary duty. First Bank did not allege a breach of fiduciary duty in its petition and did not present evidence of a duty at the trial. "A point not raised before or presented to the trial court cannot be raised for the first time on appeal." *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987) (citing *Lostutter v. Estate of Larkin*, 235 Kan. 154, Syl. ¶ 6, 679 P.2d 181 [1984]). Even if it is considered on its merits, this contention is not persuasive.

"[Participation] agreements are arms-length contracts between relatively sophisticated financial institutions and do not establish fiduciary relationships such as exist between the management of a corporation and the corporation's shareholders or even its debenture holders." *In re Colocotronis Tanker Securities Litigation,* 449 F. Supp. 828, 833 (S.D.N.Y. 1978).

See *Northern Trust Co. v. Federal Deposit Ins. Corp.*, 619 F. Supp. at 1344-45.

A fiduciary relationship may be implied if a joint venture is found, as alleged in First Bank's original petition. See Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. 447, 470 (1978). However, for the joint venture fiduciary duty to arise, the agreement must contain some language giving the participant explicit control over the loan. Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.-Cam. L.J. at 469-70. There is no such language in these agreements.

The trial court did not err in failing to find a breach of a fiduciary duty by Peoples.

Affirmed.