**In re AUTOSTYLE PLASTICS, INC., Debtor.**

**Bankruptcy No. SG 96–83767.**

United States Bankruptcy Court, W.D. Michigan.

July 14, 1998.

Butzel Long (Thomas B. Radom), Birmingham, MI, Eckert, Seamans, Cherin & Mellott, L.L.C. (William E. Kelleher, Jr., argued), Pittsburgh, PA, for Bayer Corp.

Pepper, Hamilton & Scheetz (I. William Cohen, argued), Joel D. Applebaum, Detroit, MI, for MascoTech and Citicorp Venture Capital, Ltd.

Miller, Johnson, Snell & Cummiskey (Thomas P. Sarb, argued), Grand Rapids, MI, for Venture Industries.

Donovan, Love & Twinney, P.L.C. (Michael W. Donovan, argued), Grand Rapids, MI, for Chapter 7 Trustee.

## SUPPLEMENTAL OPINION

JO ANN C. STEVENSON, Bankruptcy Judge.

Following entry of a decision in this case on December 31, 1997, see 216 B.R. 784, granting in part and denying in part the Cross– Motions for Summary Judgment filed by Bayer Corporation, MascoTech and Citicorp Venture Capital, Ltd. (Citicorp) and joined by the State of Michigan as Custodian for Certain State Retirement Systems (State), the court identified one remaining issue: Is a participation agreement entered into in March of 1990 valid when the funds relating to that agreement were not actually transferred until September 1996 assuming they were transferred at all?

MascoTech argues that a valid participation agreement exists because it purchased a $1,500,000 participation interest from CIT when it executed an agreement containing a section entitled "Participation Commitment". This section created an obligation on the part of MascoTech to make contributions to CIT in the amount equal to the outstanding principal of AutoStyle's account after it was declared in liquidation or at any time prior to AutoStyle's default. MascoTech also argues that CIT made an additional $3,000,000 loan to AutoStyle in reliance on the MascoTech and Citicorp agreements [1] and; MascoTech performed its part of the agreement by posting an irrevocable letter of credit in favor of CIT which CIT drew down in October of 1996.

Bayer Corporation claims the participation agreement is invalid because the funding was not contemporaneous with the execution of the agreement; Citicorp and MascoTech were not obligated to fund CIT until after it

---

1. In a telephonic status conference conducted on March 13, 1998, the court stated it was satisfied that the Citicorp and the State participation agreements were valid and the requisite funds were actually transferred to CIT pursuant to the agreements. Although a telephonic status conference is not a formal hearing and no binding order had been issued, the court now finds that the Citicorp and the State participation agreements are valid due to affidavits filed by the respective parties evidencing a wire transfer from Citicorp to CIT for $1,500,000 on October 30, 1996 and a wire transfer from the State to CIT for $935,252 on January 12, 1988.

had declared AutoStyle's account in liquidation and; the participants provided the funding after AutoStyle had commenced bankruptcy proceedings.

Although there are no cases directly dealing with this issue, the Kansas City Court of Appeals was asked to allocate rights under a participation agreement in *First Bank of WaKeeney v. Peoples State Bank,* 12 Kan. App.2d 788, 758 P.2d 236 (1988). The court summarized the nature of a participation agreement as "... a shared loan, an undertaking by one financial institution, usually called a 'lead', to divide a large loan which it has or will put on its books into shares which it then offers for sale to other 'participant' financial institutions. Participation agreements are simultaneously an assignment of an interest in an intangible right, a contract that prescribes duties of servicing the loan, and a document that creates an agency." The court found broad support for the conclusion that "the rights of the participant bank flow not from the participation relationship itself, but from the express terms of the specific agreement." *WaKeeney* at 790, 758 P.2d 236, citing *Hibernia National Bank v. Federal Deposit Insurance Corporation,* 733 F.2d 1403, 1408 (10th Cir.1984) (citing *Franklin v. C.I.R.,* 683 F.2d 125 (5th Cir. 1982); *Northern Trust Company v. Federal Deposit Insurance Corporation,* 619 F.Supp. 1340, 1341 (W.D.Okla.1985); *Clinton Federal Savings and Loan v. Iowa–Des Moines National,* 391 N.W.2d 712, 716 (Iowa App. 1986)). The court concluded that parties to a participation agreement may contract to whatever terms they wish. Any such contract will generally be enforced as to its terms. *WaKeeney* at 790, 758 P.2d 236.

Looking to the terms of this particular participation agreement, the section entitled, "Participant Commitment" stated:

Participant's obligation to Fidelcor [CIT's predecessor] to make contributions (i) in an amount equal to the then outstanding principal amount of loans to Borrower under the Demand Note in the principal amount of $1,500,000 upon Fidelcor's demand to the Participant after Fidelcor has declared Borrower's account in liquidation under the Agreements or (ii) at any time at Participant's option prior to Borrower's default under the Agreements (which default has not been waived or cured) from time to time in respect of a loan to Borrower in a maximum principal amount of One Million Five Hundred Thousand Dollars ($1,500,000), evidenced by the Demand Note.

■ According to the contract terms, MascoTech was required to participate in the loan to AutoStyle upon Fidelcor's [2] demand after the loan had been declared liquidated. On September 18, 1996, in compliance with the agreement and upon CIT's demand, MascoTech issued an irrevocable letter of credit for $1,500,000. By October 31, 1996, CIT drew down on that letter of credit, thereby satisfying the participation agreement. All parties to this agreement completed their respective performances. The court sees no reason why it should undo a contract executed over eight years ago and completed almost two years ago when the terms of the contract are enforceable, reasonable and completed. The court feels compelled to uphold the contract as to its terms.

■ The second part of the issue asks whether a transfer was made at all. The difference between the MascoTech transaction and the Citicorp or State transactions was the issuance of an irrevocable letter of credit instead of the actual transfer of funds. As discussed in the court's previous opinion, a participation agreement is valid if: a) money is *advanced* by participant to a lead lender; b) a participant's right to repayment only arises when the lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and d) the document is evidence of the parties' true intentions. (Emphasis added). *Matter of Yale Express System, Inc.,* 245 F.Supp. 790 (S.D.N.Y. 1965). Since the court has previously ruled on the last three elements [3], the prevailing

---

**2.** CIT was formerly known as Fidelcor Business Credit Corporation.

**3.** In its Reply Brief to Supplemental Brief of MascoTech, Inc. and Citicorp Venture Capital, Ltd., Bayer Corporation reargues many of the issues already addressed in the December 31,

issue centers around the meaning of the word "advanced".

Article 5 of the Uniform Commercial Code governs transactions involving letters of credit. Specifically, U.C.C. 5–102(1)(c) says that the scope of the article in part applies to "[a] credit issued by a bank or other person if the credit is not within subparagraphs (a) or (b) but conspicuously states that it is a letter of credit or is conspicuously so entitled." The Code Commentary states: "... since others persons may desire to bring transactions involving papers other than documents of title within the coverage of this Article, paragraph (1)(c) permits the issuer to do so by conspicuous notation that the paper is a letter of credit."

U.C.C. 5–106 states:

(1) Unless otherwise agreed a credit is established

(a) as regards the customer as soon as a letter of credit is sent to him or the letter of credit or an authorized written advice of its issuance is sent to the beneficiary; and

(b) as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.

(2) Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.

The U.C.C. affirms the rule that an issuer of credit becomes obligated from the moment it advises the beneficiary of the credit. Specifically, this section renders the issuer liable on the credit when the credit is sent or when the credit or an advice of it is sent. The effect of the establishment of the credit is twofold. After it is established the issuer may not revoke the credit or amend it without the concurrence of the other party.

■ The March 19, 1990 participation agreement reflects this rule. When referring to the funds to be paid by MascoTech to CIT, Section IV, paragraph 4.1, of the Subordinated Participation Agreement states: "The account shall be conducted solely in Fidelcor's name. Fidelcor is entitled to make advances as it deems fit under the Agreement". This provision of the contract as well as the law under the Uniform Commercial Code required MascoTech to surrender complete control of the participation funds once they were demanded and an irrevocable letter of credit was issued. Therefore, the court finds that the funds were "advanced" by MascoTech on September 18, 1996 pursuant to the terms of the participation agreement executed March 19, 1990.

NOW, THEREFORE, IT IS ORDERED that the participation agreement executed between MascoTech and CIT is valid and enforceable as to its terms.

IT IS FURTHER ORDERED that the participation agreement executed between Citicorp Venture Capital, Ltd. is valid and enforceable as to its terms.

IT IS FURTHER ORDERED that the participation agreement executed between the State of Michigan as Custodian for Certain State Retirement Systems and CIT is valid and enforceable as to its terms.

IT IS FURTHER ORDERED that the participation funds were advanced to CIT by MascoTech on September 18, 1996 in accordance with the terms of the participation agreement.

IT IS FURTHER ORDERED that to the extent Bayer Corporation's Reply Brief to the Supplemental Brief of MascoTech, Inc. and Citicorp Venture Capital, Ltd. was a Motion for Reconsideration, said Motion is Granted.

IT IS FURTHER ORDERED that the court's December 31, 1997 opinion is AFFIRMED.

IT IS FURTHER ORDERED that this Supplemental Opinion shall be served by first-class United States mail, postage, prepaid, upon William E. Kelleher, Jr., I. William Cohen, Esq., Thomas B. Radom, Esq.,

1997 opinion. To the extent its brief is a Motion for Reconsideration, the court grants the motion

and affirms in full its December 31, 1997 opinion.

Joel D. Applebaum, Esq., Thomas P. Sarb, Esq., and Michael W. Donovan, Esq.

