**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TRI-STATE TRUCK INSURANCE,
LTD.; TST, LTD; ANDREW B. AUDET,

      Plaintiffs – Appellees,

v.

FIRST NATIONAL BANK OF
WAMEGO, KANSAS,

      Defendant - Appellant,

and

THE GIBSON FAMILY LIMITED
PARTNERSHIP,

      Defendant-Intervenor -
Appellant.

No. 11-3264
(D.C. No. 5:09-CV-04158-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

    [*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Tri-State Trucking Insurance Ltd. (Tri-State) executed two commercial loan agreements to borrow over $8 million from Brooke Credit Corporation, later known as Aleritas Capital (Aleritas). Aleritas soon sold portions of the loans to other parties. Three years later, Tri-State filed suit against Aleritas in Pennsylvania state court. It alleged Aleritas had fraudulently induced Tri-State into signing the contracts. When Aleritas did not answer the complaint, the Pennsylvania court entered a default judgment which awarded damages and rescinded both loans.

The day after receiving the Pennsylvania judgment, Tri-State filed a declaratory judgment action in the Kansas federal district court naming the major participant, First National Bank of Wamego, as defendant. Although the participants were not parties to the Pennsylvania action and had no notice of the claims against Aleritas, the district court entered summary judgment in favor of Tri-State. The judge decided the Pennsylvania judgment was valid under the full faith and credit clause and the contracts' rescission eliminated all of Tri-State's obligations under the contracts. Wamego appealed. Because the default judgment would not, under Pennsylvania law, bar the participants' claims against Tri-State, we reverse in part and remand.

## BACKGROUND

A. <u>The Loans</u>

On June 30, 2006, Tri-State entered into a commercial loan agreement, Loan # 5483, with Aleritas to borrow $8,216,000. Relevant here, the addendum to the loan

agreement provided for the sale of the loan to participants and elaborated the participant's

rights:

> CONSENT TO LOAN PARTICIPATIONS; ETC. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of the Loan, including, without limitation: Lender's sale or transfer of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender . . . . Borrower additionally waives any and all notices of sale of participation interests . . . . Borrower also agrees that the . . . purchasers of any participation interests may or will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Except for liability claims based upon intentional misconduct of Lender, Borrower further waives all rights of offset or counterclaim that it may have now or later against . . . any purchaser of such a participation interest and unconditionally agrees that such . . . purchaser may enforce Borrower's obligations under the Loan irrespective of the failure of insolvency of any holder of any interest in the Loan. Borrower further agrees that the . . . purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

(Vol. 1 at 22.) On the same day, Andrew Audet, president and owner of Tri-State,

executed a stock pledge agreement as security for a second loan of $436,000, Loan #

5484, from Aleritas.[1]

On the day the original Loans 5483 and 5484 were executed, Aleritas sold

participating interests in these loans to Wamego and others. Within a short period of

time, Aleritas sold 100% of the loans to participants. The participating agreements sold

---

[1] In January 2007, Loan 5483 was amended to include TST Ltd., another company owned by Audet, as an additional borrower. The stock pledge agreement was also amended to include TST's stocks as collateral for Loan 5484.

an "undivided . . . percent interest, [Share], without recourse to Seller," and transferred to participants the rights associated with ownership:

> This Agreement includes the sale to Purchaser of a share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness. Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan . . . .

(*Id*. at 104.) After the participating interests were sold, Aleritas's only involvement was as the administrator of the loans.

Aleritas's role changed in 2008 when it executed an "Assignment and Assumption of Loan Administration Duties" transferring all of the loan administration duties to Wamego. (*Id*. at 108.) Tri-State received both a letter and an e-mail announcing the transfer of duties. Both communications advised: "These loans have not been transferred or sold by Aleritas, we are simply partnering with select banks for payment servicing to ensure quality payment processing." (*Id*. at 53-54.) From September 2008 through November 2009, Tri-State made the regularly scheduled payments to Wamego.[2] During that time, Tri-State went to Wamego when it felt temporary modifications to the loan terms were necessary. Wamego worked with Tri-State to advance the interests of both the borrowers and the participants.

---

[2] Wamego bought a participating interest in Loan 5483. It did not participate in the loan to Audet. However, when Aleritas could no longer administer the loans, the two participants in the Audet loan agreed to have Wamego administer both loans. At some point in the fall of 2008, Aleritas ceased day-to-day operations. Wamego tried to serve Aleritas on another matter in December 2008 and January 2009, but were told by the corporate representative that Aleritas was defunct.

B.  The Pennsylvania Lawsuit

In December 2008, Tri-State knew Aleritas was no longer operating and its related entities were in bankruptcy.  In September 2009, Tri-State filed suit solely against Aleritas in Pennsylvania.  It sought rescission of the loans and damages for breach of contract, negligent misrepresentation, and fraud in the inducement.  On October 5, 2009, CT Corporation, the registered agent for Aleritas at the time the suit was filed, responded that it was unable to forward the complaint to Aleritas.[3]  Predictably, Aleritas did not answer the complaint and a default judgment was entered against it on October 30, 2009.  Following a hearing at which Audet testified regarding damages, the court entered judgment awarding Tri-State damages in the amount of $5,972,661, rescinded the loans "and any and all loan documents under said loans, including any Loan Addendum, Modification, Stock Pledge Agreements, Security documents, UCC statements, Loan Obligations or Guarant[ies]."  (Vol. 2 at 461.)

Tri-State did not notify Wamego of the Pennsylvania lawsuit even though the two entities remained in communication regarding the loans.  However, the day after it obtained the Pennsylvania judgment, Tri-State registered the judgment in Kansas and also filed a declaratory judgment action in the Kansas federal district court naming Wamego as defendant.  It asked the court to declare the Pennsylvania judgment rescinding the loans relieved it of any obligations to Wamego or any other participant.

---

[3]  CT Corporation ceased acting as Aleritas's agent as of November 16, 2009.

Prior to being served with Tri-State's federal complaint, Wamego learned of this suit and the Pennsylvania judgment. On December 24, 2009, it filed a motion in Pennsylvania seeking to reopen the case and intervene in the action. Tri-State resisted the motion, arguing Wamego could protect its rights in the Kansas federal court:

> [T]he thrust of FNB Wamego's attempt to intervene in this action relates to its desire to prevent the default judgment against Aleritas from affecting its interest as a participant in Loan No. 5483. Plaintiffs do not deny that the rescission of Loan No. 5483 may affect FNB Wamego. However, as noted by FNB Wamego in its memorandum, there is already pending in the United State[s] District Court for the District of Kansas . . . . FNB Wamego will have its day in court in the declaratory judgment action to make the same arguments and raise the same issues that it apparently seeks to assert in this action. There is no reason to entertain those issues and arguments in this action when there is already a pending action involving the parties on those issues . . . . Moreover, given the issues between the plaintiffs and FNB Wamego will involve the application of Kansas state law the Kansas federal district court is particularly suited to resolve those issues.

(Vol. 2 at 434-35.) The Pennsylvania court agreed. It denied Wamego's motion because "[t]he dispute between [Tri-State] and [Aleritas] was adjudicated on December 14, 2009, and the case was not pending when Wamego's petition was filed [ten days later]." (*Id*. at 462.) In addition, the court said it made "no findings as to the merits of any claims Wamego has raised with respect to its ownership interest in Loan Nos. 5483 and 5484, or any other legally enforceable right arising out of said loans, and [found] that this Opinion and Order are without prejudice to Wamego raising these issues in the Declaratory Judgment action filed in the United States District Court . . . ." (*Id*. at 463.) Wamego did not appeal from the decision.

C. The Federal Lawsuit

The parties returned to the federal court in Kansas. Wamego filed counterclaims against Tri-State asserting breach of contract and seeking declaratory judgment holding Tri-State responsible for its obligations under the loans.[4] All parties filed motions for summary judgment.

Tri-State asserted the Pennsylvania judgment, as a valid and final judgment under the Kansas Uniform Enforcement of Judgments Act, Kan. Stat. Ann. § 60-3001 et seq., was entitled to full faith and credit in Kansas. Because the loans were rescinded by that order, Tri-State claimed it had no obligations under the loans. It also argued that Wamego's affirmative defenses, such as waiver and estoppel, must fail because they either sought to undo the Pennsylvania judgment or were not raised to the Pennsylvania court in the motion to intervene. In summary, Wamego's counterclaims failed because there was no remaining contract to breach.

Wamego, on the other hand, claimed the Pennsylvania judgment granting rescission had no preclusive effect on their claims. The contracts, for purposes of its claims, remained valid. Based on the loan documents, the participation agreements and the assignment of administrative duties, Wamego claimed it had the right to enforce Tri-State's obligations under the contract, which Tri-State breached when it ceased paying on the loans.

---

[4] Another participant to Loan 5483, Gibson Family Limited Partnership, intervened as a defendant. Gibson adopted Wamego's pleadings throughout the lawsuit. Therefore, we will refer only to Wamego.

In granting Tri-State's motion for summary judgment and denying Wamego's, the district judge determined the preclusion principles of collateral estoppel and res judicata did not bar Wamego's claims. (Vol. 5 at 1335.) Nonetheless, under the full faith and credit clause, the Pennsylvania courts would recognize the default judgment as final as between Tri-State and Aleritas. Wamego could not show the state court lacked jurisdiction, or the judgment was procured by fraud. As a result, the federal court was required to recognize the state court judgment as a final rescission of the loan contracts and Tri-State owed no further contractual obligations to anyone.

**DISCUSSION**

"In this diversity case, the substantive law of the forum state, Kansas, governs our analysis of the underlying claims." *Kan. Penn Gaming, LLC v. HV Properties of Kan. LLC*, 662 F.3d 1275, 1284 (10th Cir. 2012). However, when determining the propriety of summary judgment, we are governed by federal law and review the district court's grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *Id*. Under those standards, our review is de novo and summary judgment will be affirmed "if there is no genuine dispute of material fact and the prevailing party is entitled to judgment under the law." *Id*. (quotation marks omitted).

A. Tri-State's Motion for Summary Judgment

Tri-State claims the Pennsylvania judgment relieved it of all obligations under the loan contracts, including those to Wamego and the other participants. Generally speaking, a judgment has preclusive effect in a subsequent lawsuit in the same forum and, by virtue of the US Constitution and the full faith and credit statute, in a different forum.

- 8 -

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The statute

provides that state judicial proceedings "shall have the same full faith and credit in every

court within the United States . . . as they have by law or usage in the courts of such State

. . . from which they are taken." 28 U.S.C. § 1738. "[W]hether there is an exception to §

1738 arises only if state law indicates that litigation of a particular claim or issue should

be barred in the subsequent federal proceeding." *Marrese*, 470 U.S. at 383. Thus, we

must start our analysis of full faith and credit by determining the extent to which the

Pennsylvania judgment (*Tri-State v. Aleritas*) would preclude Wamego's claims had they

been raised in a court of competent jurisdiction in Pennsylvania.

The doctrine of collateral estoppel provides the answer.[5] Collateral estoppel, or

issue preclusion, is "designed to prevent relitigation of questions of law or issues of fact,

which have already been litigated in a court of competent jurisdiction." *Three Rivers*

*Aluminum Co. v. Zoning Hearing Bd.,* 618 A.2d 1165, 1168 (1992). It is based upon the

policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in

---

[5] This principle is distinguished from "[s]trict res judicata, also known as claim preclusion, [which] provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited." *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa. Cmwlth. 2003). For claim preclusion to apply, there must be: (1) "identity in the thing being sued upon or for"; (2) "identity of the cause of action"; (3) "identity of the persons and parties to the action"; and (4) "identity of the quality or capacity of the parties being sued." *Id.* Unlike collateral estoppel, if the requirements are met, "[a] default judgment is res judicata with regard to transactions occurring prior to entry of judgment." *Id.*

- 9 -

adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107 (1991). To succeed in precluding an issue from later consideration, the party seeking preclusion must show: (1) "the fact or facts at issue in both instances were identical"; (2) "these facts were essential to the first judgment and were actually litigated in the first cause"; and (3) "the party against whom a plea of collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in a prior action." *McGill v. Southwark Realty Co.*, 828 A.2d 430, 434 (Pa. Cmwlth. 2003). Under Pennsylvania law, a "default judgment is not entitled to the preclusive effect of [issue preclusion]" because it "lacks the requisite element that it be 'actually litigated.'" *Id*. at 435.

Under Pennsylvania law, the *Tri-State v. Aleritas* judgment would not preclude Wamego's claim. The district judge so recognized, saying, "[Wamego] was given no notice of the Pennsylvania action, was not a party to the Pennsylvania action, and is not alleged to have been in privity with any party to that action." (Vol. 5 at 1353.) Therefore, under usual circumstances, Tri-State would be unable to "enforce the Pennsylvania judgment against [Wamego]." (*Id*.)

But the judge did not stop there. Because the Pennsylvania judgment did not "purport to bind [Wamego] or any other participating bank as a judgment debtor," he concluded it was final and valid as between Tri-State and Aleritas. (*Id*.) So far, so good. But as a result, he also decided the Full Faith and Credit clause precluded Wamego's collateral attack on the rescission itself. (*Id*.) Too far, not so good. His decision creates an anomalous result: Wamego would not be precluded (by collateral estoppel) from

- 10 -

bringing this suit in Pennsylvania, but it is precluded (by collateral estoppel) from bringing it in a federal court in Kansas. Full faith and credit does not sweep that broadly. State judgments "shall have <u>the same</u> full faith and credit in every court within the United States . . . as they have <u>by law or usage in the courts of [the forum] State</u> ." 28 U.S.C. § 1738. Nowhere does the statute purport to give greater credit to state judgments in other forums. As the Supreme Court has said, it is error to give a "state court judgment greater preclusive effect than the state courts themselves would give to it." *Marrese*, 470 U.S. at 384. The Pennsylvania judgment's validity as between Aleritas and Tri-State does not affect Wamego's ability to protect its interests in subsequent litigation.

If more need be said, the discussion in *Pogonovich v. Bertolotti* (*In re Bertolotti*), 470 B.R. 356 (Bankr. W.D. Pa. 2012) is instructive. There, Bertolotti sold Pogonovich property in Pennsylvania under a land contract. *Id*. at 357. When a dispute arose, Bertolotti filed a lawsuit in state court and Pogonovich filed an amended counterclaim alleging fraud in the inducement and fraudulent misrepresentation. *Id*. at 358. When Bertolotti failed to answer, Pogonovich ultimately received a judgment against Bertolotti. *Id*. at 358-59.

When Bertolotti filed for bankruptcy, Pogonovich filed an adversary complaint seeking a declaration that the debt under the Pennsylvania judgment was nondischargeable.[6] *Id*. The court found, under Pennsylvania law, "the counts . . .

---

[6] 11 U.S.C. § 523(a)(2)(A), excepts from discharge any debt "for money property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by false

(continued . . .)

alleging fraud in the inducement and fraudulent misrepresentation were not actually litigated," and therefore, "the elements of collateral estoppel have not been met and summary judgment [was] not appropriate." *Id*. at 364.

The same principles apply here. Even if Aleritas might[7] be precluded from attempting to relitigate the propriety of the rescission, issue preclusion does not prevent Wamego from litigating the issues in a different proceeding even if it is in a different forum. According full faith and credit to the Pennsylvania court's judgment in *Tri-State v. Aleritas* does not strip Wamego (or any of the other participating interests in the loans) of its right to protect its own interests under the contract. The state court judgment did not eliminate Wamego's ability to claim rescission is inappropriate or to otherwise enforce Tri-State's contractual obligations to it.

B.  Wamego's Motion for Summary Judgment

Wamego also contends it can sue Tri-State for breach of contract. The district judge concluded Wamego had no right to sue either as a matter of contract law or under the specific terms of the loan agreements. He reasoned Wamego was not a party to the loan agreement and, generally, a participant bank has no legal relationship with the borrower and the participant cannot look to the borrower for satisfaction of the debt. *See First Bank of WaKeeney v. Peoples State Bank*, 758 P.2d 236, 239 (Kan. App. 1988)

pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

[7] We say "might" be precluded only because Pennsylvania does not apply issue preclusion to default judgments. *McGill*, 828 A.2d at 434.

- 12 -

("[I]n the absence of a negotiated contract term, the lead bank exercises sole control over the collection and enforcement of the loan."). The judge determined the loan agreement was not intended to grant third-party benefits to participants, the participation agreements conferred no rights to enforce the contracts, and the assignment conferred no additional rights to Wamego. As a result, he concluded, Wamego had no right to sue Tri-State even if the contracts were not rescinded.

While Wamego acknowledges it was not a party to the loan contract, it argues the provision regarding the rights of participants gave it an independent right to sue. It is correct.

As stated above, we apply Kansas law. "Where a plaintiff and defendant lack privity, Kansas law allows a qualified third-party beneficiary plaintiff to enforce a contract expressly made for his or her benefit even though he or she was not a party to the transaction." *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230-31 (Kan. 2005). Kansas case law distinguishes third-party contract beneficiaries into the general classes of intended beneficiaries and incidental beneficiaries. *Noller v. GMC Truck & Coach Div.,* 772 P.2d 271, 275 (Kan. 1989) (citing *Fasse v. Lower Heating and Air Conditioning, Inc.,* 736 P. 2d 930 (Kan. 1987)). A beneficiary may sue to enforce a contract made by others only if he is an intended beneficiary, *i.e.,* one who the contracting parties intended should receive a direct benefit from the contract. *Id.* "In determining whether a particular person is an intended beneficiary of a contract,

the court applies the general rules for construction of contracts." *Byers v. Snyder*, 237 P.3d 1258, 1265 (Kan. Ct. App. 2010).

It is not necessary for the third party to be the exclusive beneficiary of the contract; it may benefit the contracting parties as well. *Fasse,* 736 P.2d at 932. Nor is it necessary for the third party beneficiary to be personally named in the contract. It will suffice if he is a member of a designated class or otherwise identifiable as a person intended by the parties' language to benefit from the contract. *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 597 P.2d 622, 632 (Kan. 1979). "Before the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his benefit." *Stovall*, 107 P.3d at 1231.

Wamego points to the contractual provision specifically relating to the participants to the loan. In that provision, Tri-State permitted Aleritas to sell participating interests and waived any notice of the sale. Further, the parties "agree[d] that the . . . purchasers of any participation interests may or will be considered as the absolute owners of such interests in the Loan" and "unconditionally agree[d] that such . . . purchaser may enforce Borrower's obligations under the Loan irrespective of the failure of insolvency of any holder of any interest in the Loan." (Vol. 1 at 22.) Finally, Tri-State "agree[d] that the . . . purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender." *Id*. According to Wamego, this language clearly expresses Tri-State's agreement to allow participants the benefit of directly enforcing Tri-State's contractual obligations.

Tri-State argues as follows. It did not intend to benefit Wamego and was unaware of the existence of participants for two years. Moreover, "[c]ontracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Noller*, 772 P.2d at 275. Because the court must consider the whole contract rather than just one isolated sentence or provision, the single provision relied on by Wamego is insufficient to defeat the presumption the parties did not intend to benefit Wamgeo. *See Byers*, 237 P.3d at 1265 ("Contracts should not be interpreted by isolating one particular sentence or provision, but by construing and considering the entire instrument.").

Tri-State's assertions of its intent do not control. "The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous." *Fasse*, 736 P.2d at 933.

> Where the provisions of a written contract are clear and unambiguous, there is no occasion for applying rules of construction. A contract must be enforced according to its terms so as to give effect to the intention of the parties, and that must be determined from the four corners of the instrument itself.

*Id*. at 933-34.

In two key cases, the Kansas Supreme court has illustrated the distinctions between an intended beneficiary and other beneficiaries. In *Fasse*, a provision of the contract provided the employer agreed to pay wages based on the scale derived from the Davis-Bacon Act, 40 U.S.C. § 278a et seq. 736 P.2d at 931. Without that provision, Kansas law would require only a lower minimum wage. *Id*. When the employer attempted to pay the Kansas wage scale, the employees filed suit. The court found the

wage provision in the contract unambiguously conferred a benefit on the employees and therefore, the employees were third-party beneficiaries of the contract between their employer and the owner of property. 736 P.2d 934.

In light of the clear and unambiguous language of the loan addendum, the district judge erred in requiring more than one provision to establish the parties' intent. We do not disagree with his observation that the loan agreement "demonstrate[s] the parties' intent to benefit [Tri-State] by their receipt of the loan proceeds, and to benefit Aleritas by its receipt of interest on repayments of the loan." (Vol. 5 at 1357.) But under Kansas law, this does not preclude the participants' status as third-party beneficiaries. *Fasse*, 736 P.2d at 932 ("The contract may also benefit the contracting parties as well."). The employees in *Fasse* were not the focus of the construction contract; it was the specificity of the provision granting them a certain benefit that conferred their third-party right to enforce the receipt of that benefit.

Tri-State agreed to allow the sale of participating interests, to waive notice of the sale, and to consider the participants "as the absolute owners" of their interests. (Vol. 1 at 22.) And Tri-State "unconditionally agree[d] that such . . . purchaser may enforce Borrower's obligations under the Loan irrespective . . . of any personal claims or defenses that Borrower may have against Lender." (*Id*.) No one claims this language is ambiguous—and the benefit is obvious. Tri-State correctly quotes *WaKeeney*, "in the absence of a negotiated contract term, the lead bank exercises sole control over the collection and enforcement of the loan." *Wakeeney*, 758 P.2d at 239. But the case is of no help to it because here the parties agreed that the participants would have the right to

- 16 -

enforce Tri-State's obligations under the loan.  The participants were intended beneficiaries of the loan agreement between Tri-State and Aleritas pursuant to the addendum to Loan # 5483.

*Stovall* is not contrary to this result.  There, the Kansas Supreme Court looked to the Restatement (Second) Contracts § 302, as support for its determination that the State was not an intended third-party beneficiary to the contract between its contractor and a subcontractor.  The Restatement section provides in relevant part:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary . . . .

*Stovall*, 107 P.3d at 1232 (Restatement (Second) Contracts § 302).  The Comment to this section defines "a 'promisee' as the person to whom a promise is addressed, and 'beneficiary' as a person other than the promisee who will be benefitted by performance of the promise."  Restatement (Second) comment a.  "Both terms are neutral with respect to rights and duties: either or both or neither may have a legal right to performance."  *Id*. The *Stovall* court reasoned:

> While the State's plans and specifications are referenced within the subcontracts in question, there is no language clearly expressing an intent for the subcontractors to assume a direct duty to the State.  The provisions referenced by the State do not include a promise or the specific intention to benefit the State, nor were the provisions made directly and primarily for the [State's] benefit.

107 P.3d at 1232 (quotation marks omitted).

Unlike the parties in *Stovall*, Aleritas, the promisee in this case, contracted with Tri-State to allow the participants to enforce their interests in the loan. It cannot be doubted that the performance of this promise will satisfy Aleritas's obligation to pay the participants the money owed on their participation interests, placing the situation here directly within the Restatement's parameters. The general rules limiting the rights of participants notwithstanding, the contract addendum between Aleritas and Tri-State unambiguously gave Wamego and the other participants the right to enforce the contractual obligations affecting their interests in Loan # 5483.

Loan # 5484, however, did not include the addendum providing for the participants' rights. And neither Wamego nor the Gibson Family signed a participation agreement with Aleritas securing an interest in that loan. Therefore, the only document which may grant Wamego a right to enforce Audet's obligations under Loan # 5484 is the assignment of administrative duties from Aleritas to Wamego, but Wamego does not argue this point on appeal. In sum, Wamego makes no argument which would establish standing to sue on Loan # 5484. The district judge did not err in granting Tri-State summary judgment on Wamego's claims relating to the loan to Audet.

The grant of summary judgment in favor of Tri-State on Loan # 5483 is REVERSED, summary judgment in favor of Tri-State on Loan # 5484 is AFFIRMED, and this case is REMANDED to the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

- 18 -